State vs. Lartigue and Williams.

No. 691.

THE STATE VS. J. H. LARTIGUE AND THOMAS WILLIAMS.

An indictment for stealing need not expressly designate the offense charged as grand or petty larceny.

The parish courts have jurisdiction, and hence have power to receive informations, in all criminal cases, when the offense charged is not necessarily punishable with death, or imprisonment at hard labor, and when the accused waives his right of trial by jury.

A mere opinion as to the guilt of the accused, unassociated with any bias, or prejudice, does not disqualify a person to serve as juror.

The judge is authorized, on his own motion, to strike a juror from a regular panel, if satisfied that the juror is morally unfit to return a just verdict.

APPEAL from the Fourteenth Judicial District Court, parish of Ouachita. *Parsons*, J. Trial by jury.

*W. N. Potts*, District Attorney, for the State and appellee.

*Robert J. Caldwell* and *Robert Ray*, for defendants.

The opinion of the court was delivered by

MARR, J. In March, 1877, the district attorney filed an information in the parish court of Ouachita against Julien H. Lartigue and Thomas Williams, who were in prison, in default of bail for their appearance at the next term of the district court, charging that they, at and in the parish of Ouachita, on the sixth of February, 1877, " with force and arms, one cow, of the value of fifty dollars, of the goods, chattels, and property of Robert Miller, then and there being found, feloniously did steal, take, and carry away." Warrants of arrest were issued on this information, and the accused being brought into court, both decided not to waive trial by jury.

At the ensuing term of the district court the accused appeared and filed separate motions to quash the information on the grounds:

First—That prosecution by information can not originate in the parish court, and must originate in the district court, which alone has power to try criminal cases by jury.

Second—That the accused could not be legally called on by the parish judge, in whose court the information was filed, to say whether they would be tried by the parish judge or by a jury, because the parish judge could not tender them a jury.

Third—That the law of the State of Louisiana makes a distinction between grand and petty larceny; and the information does not state whether the offense charged is grand or petty larceny.

Fourth—That by the law of the State the punishment is greater for grand than it is for petty larceny, thereby making two distinct offenses.

The two grounds last mentioned were taken by Lartigue alone, who also moved the court to grant him a separate trial on the ground that

his defense would be prejudiced if both the accused were tried together; and he also moved for a change of venue on the ground that he could not obtain an impartial trial in the parish of Ouachita by reason of the prejudice existing in the public mind.

Our attention has not been called, by bill of exceptions or otherwise, to any error of law in the ruling of the district judge in refusing these motions; and we can not undertake to review his decision in this respect.

The motions to quash having been overruled, the accused pleaded not guilty, elected to be tried by jury, and were convicted; and they have appealed from the judgment sentencing them to two years imprisonment in the penitentiary.

Four bills of exception, and the motions to quash, present the only questions which we can consider, and we shall dispose of them *seriatim:*

First—As to the objections based upon the distinction between grand and petty larceny, established by section eight of the act of 1874, p. 223, creating the Superior Criminal Court, but little need be said. This section declares that the crime of larceny shall be divided into grand and petty larceny. If the thing stolen be of the value of one hundred dollars or more, the crime is grand larceny, and the penalty is imprisonment in the parish prison, or at hard labor in the penitentiary, at the discretion of the court, for not more than ten years. If the value be less than one hundred dollars, the crime is petty larceny, and the penalty is imprisonment in the parish prison, or in the penitentiary, at the discretion of the court, for not more than two years. The mode of trial and all the proceedings are the same, whether the crime be grand larceny or petty larceny. The only difference is in the penalty. The word "larceny" is not used in indictments and informations. It designates the offense which is usually called stealing, and it is aptly charged in the information in this case by the words "*feloniously did steal, take, and carry away* one cow, of the *value* of fifty dollars, of the good, chattels, and property of Robert Miller." It would not be possible to charge the crime of petty larceny, as defined in the statutes, more clearly; and the sentence is for the penalty appropriate to that crime.

Second—The other grounds of the motion to quash are based upon the supposed want of jurisdiction in the parish court.

By the constitution, article six, the right of trial by jury is secured to the accused in all prosecutions. Article eighty-five confers upon the district courts unlimited jurisdiction in criminal cases; and article eighty-seven provides that the parish courts shall have jurisdiction in criminal matters, " in all cases when the penalty is not necessarily imprisonment at hard labor, or death, *and when the accused shall waive trial by jury.*" This article goes on to declare that the parish courts shall also have the power of committing magistrates, " *and such other jurisdiction as may be*

conferred on them by law," and that "there shall be no trial by jury before the parish courts."

It is obvious, therefore, that the parish courts have jurisdiction in criminal matters in those cases only in which the two conditions concur:

First—A charge not necessarily punishable by imprisonment at hard labor or death; and,

Second—The waiver by the accused of trial by jury.

As the district courts have unlimited jurisdiction in criminal cases, the restricted jurisdiction thus conferred upon the parish courts is necessarily concurrent with that of the district courts.

The word jurisdiction, as used in this article, eighty-seven, evidently means the power to hear and determine, *jus dicere,* to say what the law is; or, as article seventy-six of the Code of Practice defines it: "Jurisdiction means the power of him who has the right of judging." Substituting for the word "jurisdiction" the words "the right of judging," and the clause of article eighty-seven in question will read thus:

"In criminal matters the parish courts shall have *the right of judging* in all cases when the penalty is not necessarily imprisonment at hard labor, or death, and when the accused shall waive trial by jury." The penalty of larceny, whether grand or petty, is not necessarily imprisonment at hard labor, or death; and the authority which the Legislature has chosen to confer upon the parish courts to receive informations in the cases which may fall within their cognizance, to have the accused arrested and brought before them, and required to decide whether they will waive trial by jury, is no enlargement of their jurisdiction, their right of judging, nor is it in excess of legislative power.

This grant of jurisdiction to the parish courts necessarily assumes that the accused, in the class of cases specified, have the right to waive trial by jury; but it does not indicate the manner in which this faculty or right of waiver shall be exercised, nor how the decision of the accused shall be manifested. This deficiency is supplied by the act of 1868, No. 120, which in no way enlarges the jurisdiction, the right of judging; nor does it violate either the letter or the spirit of the constitution.

Section four of this act, p. 157, authorizes the district attorneys to file informations in the parish courts against all persons accused of crimes which may be cognizable in said courts, upon which it is made the duty of the parish courts to issue warrants for the arrest of the accused, and to fix the amount of the bail-bonds to be given by them.

Section five requires the accused, in all such cases, to appear, if under bond, or to be brought into court by the sheriff or other officer, if in actual custody, "and such accused shall, without being required to make any motion, plea, or answer to such information, first decide whether they will waive trial by jury." If they decline to waive trial by jury, the

State vs. Lartigue and Williams.

proceedings are transferred to the district court, where the accused must appear and answer, just as if the prosecution had been commenced in that court.

By section six, if the accused shall decide to waive trial by jury, " the parish court shall *then* take cognizance of and proceed to try and determine the case."

In cases originating in the district courts, in which the penalty is not necessarily imprisonment at hard labor, or death, before the accused shall be required to file any motion, plea, or other defense, " he will be required to decide whether he will waive trial by jury; and if he shall decide that he waives trial by jury, the district court shall proceed to try the case;" and if, from any cause, the case is not tried at that term, the proceedings shall be transferred to the parish court, which shall take jurisdiction of and try and determine the case. Section seven, p. 158.

This act is a wise provision of law. It is necessary that some tribunal holding frequent sessions should have jurisdiction of criminal cases, minor offenses, in which the accused, if unable to give bail, may prefer a speedy trial, rather than remain in jail until the meeting of the district court, which holds but two sessions in the year; or in which, for any reason, the accused may choose to waive his unquestionable constitutional right of trial by jury, and to risk the finding and decision of the judge rather than that of twelve of his peers.

The proceedings in this case were strictly in accordance with the act of 1868. The information was properly filed in the parish court. The opportunity was afforded to the accused, as the law requires, to waive trial by jury and be tried at once by the parish judge, if that had been their choice and decision; and the case was transferred to the district court, and there tried and determined, because they chose and decided not to waive the right of trial by jury.

Third—The first bill of exceptions calls in question the correctness of the ruling of the district court in requiring the accused, when arraigned, to say how they would be tried, they having already, in the parish court, decided not to waive trial by jury.

We are at a loss to understand the object of this bill of exceptions, since no possible injury was done to the accused, nor were their rights in any manner impaired. Perhaps, as the prosecution did not originate in the district court, it was not necessary to ask the accused how they would be tried. But they elected to be tried by jury, they were tried by jury, and no attempt was made to induce them to forego the right so to be tried. If the prosecution had originated in the district court, the accused would have been required, *in limine*, to make their election, whether to be tried by jury or by the court. There was a time when there were several modes of trial, notably, by wager of *battel*, by the

ordeal of fire, by the ordeal of water, etc., and the form which was then necessary, on the arraignment of the accused, in order to give him his right of choice, has been preserved, though it is no longer necessary. It. may be useless, without significance, but it can do no harm to the accused, to have the question put to him in solemn form: "How will you be tried?" and to require him, even when he must necessarily be tried by jury, to answer: "By God and my country."

Fourth—The second bill of exceptions is to the ruling of the court in declaring competent as a juror one Hudson, who, in answer to the usual question, whether he had formed or expressed any opinion as to the guilt or innocence of the accused, said: "I think, from what I have heard, the parties are guilty." The judge adds to this bill of exceptions. that "the further examination of the juror on his *voir dire* showed that. his opinion was not fixed, and predicated on rumor, and, in *his* opinion,. could not influence his verdict."

We think the rule as stated in Bunger's case, 14 An. 462, is correct, that "an opinion predicated upon rumor, when there is no bias or prejudice in the mind of the juror, is not a disqualification," and that the judge did not err in deciding that Hudson was a competent juror. He was challenged, peremptorily, and did not serve in the case, and it is not. shown that the accused exhausted their challenges, or suffered any injury from that ruling.

Fifth—The third bill of exceptions is to the *ex parte* action of the court. in striking from the regular panel one of the jurors, Hayward Roach. The judge states that Roach was discharged for misconduct as a juryman in a case which had just been tried. Other jurors had brought it to the attention of the court that Roach had, before being sworn as a juror,. stated that he had not formed or expressed an opinion in the case as to the guilt or innocence of the accused, and, afterward, and to the other members of the jury, he admitted and stated that he had previously formed an opinion, and would not agree to a verdict contrary to that. opinion. The judge had also been further informed that the same juryman had promised the accused in that case not to bring in a verdict against him.

If the statements made to the judge, and upon which he discharged. Roach, were true, and susceptible of proof, he should have been prosecuted at once, and should now be prosecuted without delay. It was the plain duty of the judge to strike his name from the list of jurors, and,. we think, he should have ordered Roach into the custody of the sheriff.. His presence was a pollution of the temple of justice; and he was better fitted to render the State service in the penitentiary than to sit in judgment as a juror on the solemn and momentous question of the guilt or innocence of his fellow-men.

State vs. Lartigue and Williams.

Sixth—The fourth bill of exceptions is by Lartigue alone, to the ruling of the court:

1. In taking up the case out of order, and in violation of the rules of court.

2. In calling the case without having first had it fixed for trial, and notice given to the accused. Before this objection being made the district attorney asked the judge to fix the case then, which was accordingly done.

3. In striking the name of Roach from the list of jurors; about which nothing more need be said.

The judge states that at the beginning of the third week of court, when the criminal docket was taken up, the court made a special rule requiring prosecutions against parties then confined in the parish prison to be taken up and first disposed of, the accused being then in jail, and the case being reached on the regular call of the docket.

There is no statement or complaint that the accused were denied, or that they asked for, any continuance or delay; nor that any witness in their behalf was not in attendance; nor that their means of defense was abridged or impaired; nor that they suffered any injury or prejudice from the action of the court.

We find no error in the judgment appealed from, and it is therefore affirmed with costs.