43  897
47  547

43  897
48 1447
48 1b19

### No. 1414.

THE STATE OF LOUISIANA V.S. NEWTON J. CAUSEY ET AL.

The drawing and placing of a disqualified person on a grand jury, as a member thereof, and the subsequent removal of such person from it by the court, after impanelment, on objection, for proper disqualification, do not so vitiate or infect that body as to paralyze it and blot it out of existence.

An indictment presented with a true bill by the body, as it remained constituted, is valid, and should not be quashed, although the motion be made before conviction.

The fact that a fair and impartial jury has been obtained, pending a motion for a change of venue, is a sufficient answer to refuse the application.

Its actuality demonstrates its possibility.

57

An indictment which charges a "lying in wait, shooting, attempt to murder and felonious intent," in terms which show a concurrence in point of time, can not be successfully levelled against, by a motion in arrest.

A
PPEAL from the Twenty-second District Court; Parish of Ascension. *Duffel, J.*

*R. M. McCulloh* and *John D. Ogden*, District Attorney, for the State, Appellee:

1. The drawing of one incompetent member on a grand jury does not vitiate that body. Secs. 4, 5, 6 and 10, Act 44 of 1877; State vs. Foster, 31 An. 34; State vs. Washington, 33 An. 1403.

2. Where the incompetent grand juror has been set aside, the "sixteen" of Act 44 of 1877, being not sacramental, the remaining "fifteen" can find a bill. State vs. Swift, 14 An. 827; 15 An. 193; 8 R. 618; People vs. Butler, 8 Cal. 435; People vs. Hunter, 34 Cal. 65; People vs. Gateswood, 20 Cal. 147; A. and E. Ency. of Law, p. 466, and note to page 6, Vol. 9.

3. There is no injury to a defendant by a finding of the indictment by a jury composed only of fifteen members at the time of the finding, because the smaller the number among whom the twelve are to be found to concur, the more secure is the defendant from being indicted. Bishop Crim. Pro., Vol. 1, p. 505, Sec. 855.

4. Unless an abuse of discretion be clearly shown, the decision of the judge on a motion to change the venue will not be interfered with. 11 An. 607; 30 An. 364; 31. An. 91; 38 An. 459.

5. There is no fixed rule defining what shall or shall not be considered proof that a fair and impartial trial can not be had. A. and E. Ency. of Law, p. 100, Vol. 3. There is no error in postponing the consideration of a motion to change the venue until an attempt is made to impanel a jury. Ibid, p. 99.

6. The fact that a fair jury is obtained, is an answer to the affidavit for the change of venue. 33 Gratt (Va.). 880; Ibid, p. 100.

7. An indictment is sufficient when the words "then and there" are otherwise supplied. 35 An. 622. "While" means time during which; and an indictment, charging the shooting with intent, under Sec. 790, R. S., 1870, to have been done while lying in wait, is good.

8. An imperfect averment of time is cured by. Sec. 1063, R. S. of 1870, or, if not, being a merely formal defect, it should have been urged before plea. Sec. 1064, R. S. 1870; 11 An. 163.

9. "With intent wilfully, feloniously, and with malice aforethought, to commit the crime of murder," is not a conclusion of law, but one of fact, the intent being specifically qualified thereby as murderous, and the word "commit" being an averment of action meaning "to perpetuate," "to enact." 35 An. 622.

10. Where an indictment follows the statute, and the defendant insists upon its insufficiency, it is for him to show satisfactorily why the offence should have been charged in a different manner. 13 An. 243.

State vs. Causey et al.

*E. N. Pugh* and *R. N. Sims* for Defendant and Appellant:

The declaration of Art. 5 of the Constitution of Louisiana (Art. 5 Amendments to Federal Constitution and 14th Amendment), that "No person shall be held to answer for a capital crime unless on a presentment or indictment by a grand jury, is jurisdictional, and no court of Louisiana has authority to try a prisoner without indictment or presentment in such cases.

The indictment here referred to is the presentation to the proper court, under oath, by a grand jury duly impanelled.

Without such indictment there is nothing which the prisoner can be "held to answer." A trial is void. There is nothing to try.   121 U. S. 1; 5 Eng. 71; 22 Ark. 16, 127, 198; 19 Tex. 107, 52; 12 S. and M. 68; 7 Yerger, 27; 17 Wis. 674; 9 Flo. 9; 63 Ala. 126; 12 Flo. 562; 18 Tex. 629; 98 U. S., 154; 1 Utah, 226; 3 Utah, 488.

The foreman and fifteen jurors, drawn as required by law, constitute the grand jury. The number being fixed by law, neither more nor less will suffice. The exact number must be on the panel, otherwise there is no "grand jury." 3 Utah, 488; 98 U S. 154; 18 Tex. 682; 19 Tex. 49; 5 Eng. 71; 22 Ark. 127, 198; 18 Tex. 627.

In this case at no time was there a grand jury, for only the foreman and fourteen jurors were on the panel. Never at any time was there a panel of sixteen good and true men.   12 Flo. 562.

The action of the judge on the trial for the application for change of venue was illegal and against the law.  37 An. 454; 36 An. 87.

The indictment is fatally defective in not alleging that the specific acts required to make the offence concurred in point of time. Where intent at the time the offence is committed is a necessary ingredient in it, it is as necessary to state the intention in the indictment as any other of the facts and circumstances which constitute the offence.  Arch., p. 50; 33 An. 921; 8 R. 600, 602, 612; 21 An. 347; 35 An. 632; 42 An. 275.

---

The opinion of the court was delivered by

BERMUDEZ, C. J.  The defendant, Causey, was indicted for lying in wait and shooting with intent to murder, and, on conviction, sentenced to hard labor for five years.

On appeal, he complains that the trial judge illegally overruled the several motions made by him to *quash* the indictment, to change the *venue*, for a *new trial*, and in *arrest* of judgment.

I.

The motion to quash, seasonably made, rests upon the ground that the indictment was presented with a true bill, by a body of men who did not constitute the legal grand jury, to which he is entitled under the Federal and State Constitutions, in this: that the said body was composed of fifteen men only; though qualified, the sixteenth member, after the drawing and impanelling, having been

discharged by the court, in other cases, on complaint based on the fact that he was an alien, and, therefore, incompetent.

It appears that on the first day of the term the foreman of the grand jury was selected by the judge, and fifteen others were drawn by the sheriff from the jury box; that these sixteen men were duly sworn and charged as the grand jury in and for the parish of Ascension for the opening term; that thereafter they reported two true bills of murder against certain parties, which were quashed at their instance on the ground that one of the panel was not a good and competent juror, being an unnaturalized citizen; that said person was removed by the court from the jury who subsequently reported a bill against the defendant in this case, which was duly presented and accepted. Thereupon the defendant moved to quash the indictment, as stated. The court declining to do so, a bill was reserved to the refusal.

The question presented for solution is novel, important, and may well be stated as follows: Whether the drawing and placing of a disqualified person on a grand jury, and the subsequent elimination of such person from it, after impanelment, on complaint, for disqualification, so vitiates or infects that body as to paralyze it and blot it out of existence at once and absolutely.

The contention is that the grand jury must, at the moment of impanelling, be composed of sixteen qualified members, *one* selected foreman by the judge, and *fifteen* drawn, all as provided by law.

It is therefore agreed that, unless the sixteen members be, each and all, qualified at that time, the body is not a grand jury, and that a true bill found by them on an indictment is not *jurisdictional;* that it does not justify the prosecution, and that a conviction on a charge returned on such indictment is violation of both Federal and State Constitutions.

It is therefore conceded that, when the empanelled grand jury is composed of sixteen qualified members, it has a legal existence and can lawfully discharge its functions, and that it can not be put out of life, should any of the sixteen members, not required to find a bill, die or absent himself.

The proposition is now well established, that although a grand jury may be composed of one or more disqualified members, the irregularity can not be successfully invoked *after* conviction, and, there-

State vs. Oausey et al.

fore, that a verdict rendered on an indictment presented by such grand jury remains unassailable by the accused.

This implies the correctness of the proposition that the mere disqualification of a person placed on such grand jury, is not in itself such a fact as absolutely deadens the body; for, if such were the case, the irregularity could not be cured, either by tacit or formal waiver, a thing which, indisputably, can be done.

It therefore follows, that such body, notwithstanding the presence of such defect in its organization, has an actual existence, sufficient to enable it to perform functions hypothetically lawful.

It can not be denied that, where a grand jury is irregularly composed, in part of one or more persons clearly disqualified by law, and such person or persons *participate* in the finding of a bill, whether as part of the twelve constituting the *quorum*, or of the others, an accused is now recognized the right, on proper, timely motion, to have the indictment quashed, and this, because the charge was not found by qualified jurors, in as much as *all* the members who find a bill must be absolutely competent.

Nevertheless, it is quite difficult, and it may be said impossible, to logically conclude, where the bill is found by at least the *twelve* members who constitute the *quorum*, although the number of all be not actually *sixteen*, the finding is necessarily void and unjurisdictional.

It is not sacramental that a grand jury shall be, like a petit jury in criminal cases, composed of a certain given number of persons.

It may be constituted by law with twelve, eighteen, twenty, or any other reasonable number of persons, a certain stated proportion of whom composing a *quorum*, is competent to transact business.

Neither is it sacramental that *all* the members shall be present and participate in the finding, when such can be found by a *quorum*.

That which is sacramental is that the members who participate or concur in the finding, must be qualified and competent jurors, under pain of nullity of their action.

This is precisely what occurred in this case.

The members of the grand jury who found the bill were all qualified to act and find the bill they did.

It is no more indispensable that the members of a grand jury, in excess of the twelve required for a *quorum* composed of qualified members, should be qualified to give validity to the action of that

*quorum,* than it is that two of the members of this court should be qualified to give vitality to a judgment rendered by the remaining qualified three.

Under the circumstances of this case, it is manifest that the trial judge could not have sustained the motion.  His power to fill the vacancy was most questionable.   Had he quashed the indictment for the cause stated, he would have disorganized and completely disabled the body, as no other could have been formed before the next term of court, thus, meanwhile, clogging the wheels of criminal justice in his jurisdiction.

In the oral and printed argument of the able counsel for the defence, reference is made to a number of cases from other jurisdictions, in which, it is claimed, that courts of last resort have ruled in a sense favorable to the position taken by him.

The reports containing the rulings invoked are not within our reach at this place.   It may be that, in the cases mentioned, the indictments were quashed, because found by members of the grand jury, one or more of whom, who had *participated* in the finding, were disqualified from serving on such jury, or because of some other reason which we would recognize as sufficient.

However, if it were otherwise, we would be slow to adopt too liberal interpretations of criminal laws, which should be strictly construed for the benefit of both State and accused.

Public interest, a proper administration of law, a speedy trial of offenders for conviction or discharge, for the security and well-being of persons and property in society, imperiously demand that, while an accused must be protected in the assertion and vindication of all such of his rights as entitle him to a fair and impartial trial, the corresponding rights of the commonwealth against the commission of crimes and the escape of guilty parties from punishment on questionable technicalities and casuistic quibbles, in cases in which no injury was sustained, must be equally respected and shielded.

To conclude on this subject, it is appropriate to repeat the language used by this court in the case of State vs. Humphreys, 35 An. 967, viz.:

" Niceties in judicial construction of criminal statutes, such as that urged upon us here, were deplored by Lord Hale more than two centuries ago, when he wisely and feelingly said, " that the strictness required in indictments had grown up to be a blemish and inconven-

State vs. Causey et al.

ience in the law, and the administration thereof, and that more offenders escape by the over easy ear given to exceptions to such indictments than by the manifestation of their innocence, and that the greatest crimes have gone unpunished by reason of these unseemly niceties."

## II.

On certain averments, under the provisions of the law in such matters, R. S. 3892, the accused moved for a change of venue, and on suggestion of the district attorney that an effort be made *first* toward procuring a jury out of the regular *venire* for the week, so as to ascertain the fact, the court, over defendant's objection, pro-ceeded to the formation of the jury, which was in due course reg-ularly constituted and impanelled.

The district attorney then proposed to take up the motion for a change of venue. This was done notwithstanding defendant's objections, and the motion being denied, the trial of the case was pro-ceeded with, a bill being reserved.

The contention is, that the accused had a right to make the mo-tion, and that it was the duty of the judge, after hearing the evi-dence, to pass upon it, and that the judge did not hear any proof, but, considering the fact of the formation of the jury, denied the motion.

It is useful to state, that each of the jurors, when called, was sworn and examined on his *voir dire*, and testified that he was com-petent to try the accused fairly and impartially.

There exists no established or fixed rule defining what shall be considered proof that a fair and impartial trial can not be had. It has been held that the court is not precluded from acting in part on personal knowledge possessed by it. Gisce vs. Schultz, 60 Wis. 449.

The fact that a fair and impartial jury has been obtained, pending the motion for a change of *venue*, has been held to be an answer to the *affidavit* therefor. State vs. Gray, 8 West. Coast Rep., Nev. 72; Wright vs. Commonwealth, 33 Gratt., Va., 880; People vs. Plum-mer, 9 Cal. 298; Hunter vs. State, 43 Ga. 483; Ward vs. Morey, 1 Wash. Ter. 122; A. and E. N., V. 3, pp. 99 and 100, and notes.

Indeed, *ab actu ad posse, valet consecutio*—the actuality of a fact demonstrates the possibility of its existence.

As a rule, applications of this character are addressed to the sound discretion of the trial judge, who may even act on his own knowl-

edge, and, unless an abuse of such discretion is clearly shown, his decision is not to be interfered with.    State vs. Ford, 37 An. 443.

The judge was satisfied with the test suggested, which had proved successful.

The fact that the jury was a fair and impartial jury appears from the circumstance that, although they found the accused guilty, they recommended him to the mercy of the court, and nothing shows that the judge disregarded, as he might have done, their recommendation.

In this instance, far from it appearing that the judge misapplied the law, it is evident that he had good authority to act and *rule* as he has done.    On a review of his ruling, in this respect, we can not, therefore, say that he erred, but, on the contrary, hold that he did not.

### III.

The third ground of complaint is that the trial judge illegally overruled the motion in arrest, which was that the indictment was fatally defective in not alleging that the lying in wait, shooting and attempt to murder *concurred in point of time*, and *also* " that the indictment fail to charge that the defendant then and there entertained a felonious intent to murder."

The motion, besides, avers that the indictment fails to charge defendant with the intent to kill and murder, but solely " to commit the crime of murder, which is a mere conclusion of law."

On appeal, the first ground alone is insisted upon, the second being, apparently, abandoned.

The indictment charges that the defendant Causey and Hamilton did, on the 25th of February, 1891, with force and arms, in the parish of Ascension, and within the jurisdiction of the Twenty-second District Court of the State of Louisiana, " while " lying in wait, wilfully, feloniously and of their malice aforethought, shoot one Thomas Moore Webb, in the peace of the State, then and there being with a dangerous weapon, to-wit, a double-barreled shotgun, with intent wilfully, feloniously and of their malice aforethought, to commit the crime of murder in and upon the said Webb, contrary to, etc.

It may be that the indictment could, or perhaps *should*, have more technically and fully set forth the charges against the accused; but an attentive consideration of the language used satisfies the mind that the lying in wait, the shooting, the attempt to murder, together

with the felonious intent to murder, are charged with a concurrence in point of time; therefore, as coexisting with sufficient clearness and precision to put the accused on his guard for his defense.

A philological *dissertation* on the subject would subserve no useful purpose.

Nothing is said as regards the motion for a new trial, which on its face is not entitled to notice, and is therefore ignored. It contains grounds which were the object of bills of exceptions, which have been disposed of.

Judgment affirmed.