**(97 South. 27)**

**No. 25860.**

**STATE v. HOLBROOK.**

(April 30, 1923. Rehearing Denied June 4, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Criminal law ⬚126(2)—Motion for change of venue for alleged local prejudice held properly denied.**

Though deceased had many relatives, some of whom were prominent officials in the parish, where the evidence showed it would be possible to secure a jury, that the jurors were not likely to be influenced by views of the parish officials, and that such officials had not, as claimed, been discussing the case with prospective jurors, and the jury was secured after examining only 57 jurors, change of venue *held* properly refused, especially where the trial judge stated on his own knowledge that defendant could obtain a fair trial.

2. **Criminal law ⬚134(2)—Affidavits not admissible on motion for change of venue.**

On motion for change of venue for alleged local prejudice, defendant's witnesses should have been produced in open court, in order that they might be cross-examined, and affidavits were properly rejected.

3. **Jury ⬚103(6)—Jurors having opinions that would yield to evidence not disqualified.**

Jurors who had formed opinions, but said that such opinions would yield to the evidence, were not disqualified.

4. **Jury ⬚90—That juror related to expected witness held not to disqualify him.**

That juror's aunt might be called as a witness, and that he had spoken to her, did not

disqualify him, where she had told him she knew nothing about the case.

5. **Homicide ⬚187—Question whether different wound would have been fatal held immaterial.**

Where the question was whether shooting was deliberate or in self-defense, question by defense to state's witness as to whether wound would have been fatal, if it had missed one of the two arteries which it severed, was hypothetical, immaterial, and properly excluded.

6. **Criminal law ⬚404(4)—Deceased's clothing admissible to corroborate testimony as to deceased's position.**

Where deceased's blood-stained clothing was identified by several witnesses, it was properly admitted to corroborate testimony of state's witnesses as to position of deceased when shot.

7. **Homicide ⬚169(1)—Details of poisoning of defendant's dog, about which dispute arose, held irrelevant.**

When the question was whether defendant shot deceased for poisoning defendant's dog, or in self-defense during a discussion about such poisoning, and evidence of the poisoning, defendant's purpose in seeking deceased, and the circumstances of the meeting was admitted, details of the poisoning were irrelevant, and properly excluded.

8. **Criminal law ⬚369(2)—Cross-examination as to another arrest proper, when defendant sought suspended sentence.**

Where defendant offered testimony that he had never been convicted, and asked charge as to suspended sentence, question on cross-examination as to arrest for violating law was properly permitted, especially where he answered, satisfactorily to himself, that he was charged with speeding and paid a fine.

9. **Criminal law ⬚683(1)—Evidence contradicting that for defendant admissible in rebuttal, though cumulative.**

When defendant testified he had just stopped his car when deceased came up, testimony that he had been stopped for some time was admissible in rebuttal, though the state had previously introduced several witnesses, who testified to the same effect.

10. **Criminal law ⬚720(9)—Characterization of killing as cold-blooded murder in argument not improper.**

It was not improper for state's associate counsel in his opening remarks to state that defendant shot deceased in cold blood, and for district attorney in his argument to say the

case was cold-blooded murder, where they were merely commenting on the evidence, and not giving testimony.

**11. Criminal law ⬤⟶1038(1)—Defendant, failing to object, could not complain of lateness of hour of charge.**

Defendant could not complain that the charge was given about midnight, where it was given immediately after the arguments closed, without objection at the time.

**12. Criminal law ⬤⟶1059(2)—Defendant, failing to point out error in charge on request, cannot complain thereof.**

Where defendant, although excepting on ground that judge had not charged properly as to self-defense, did not point out any error or omission when requested to do so, he had no ground of complaint.

**13. Criminal law ⬤⟶755½ — Charge that poisoning of dog did not justify homicide not comment on evidence.**

Where state claimed defendant killed deceased for poisoning his dog, and defendant claimed self-defense, and the judge charged on both phases and told jury that they were the exclusive judges of the facts, and that the court could not comment on the evidence, a charge that poisoning of dog would not justify or mitigate killing was not a comment on the evidence.

**14. Criminal law ⬤⟶824(9) — Failure to charge on circumstantial evidence without request not error.**

The failure to charge on the law of circumstantial evidence was not error, when such charge was not requested, especially when there was nothing to show it would have been applicable.

**15. Homicide ⬤⟶127—Indictment held not defective because of order of words.**

Under Rev. St. art. 976, permitting common-law forms of indictment, divested of unnecessary prolixity, an indictment for murder was not defective because the words "and of his malice aforethought" intervened between "feloniously" and "kill and murder."

**16. Criminal law ⬤⟶261(2)—Failure to rearraign after denial of change of venue not error.**

That defendant was not rearraigned after his motion for change of venue was denied was not error where the plea had not been withdrawn, especially as under Rev. St. art. 1031, no change of venue can be awarded until plea of not guilty is entered.

**17. Criminal law ⬤⟶1177—Award of costs in judgment held harmless surplusage.**

Under Rev. St. art. 979, providing that every judgment of conviction shall subject the person convicted to payment of costs, award of costs in the judgment, when not mentioned in the verdict, was harmless surplusage.

**18. Criminal law ⬤⟶1158(1)—Supreme Court cannot review weight of evidence.**

The Supreme Court has nothing to do with the weight and sufficiency of the evidence.

**19. Criminal law ⬤⟶918(3)—Number of jurors drawn from certain wards cannot be complained of, without challenge to array.**

That three-fourths of jurors were drawn from three wards, in which deceased and many of his relatives resided, is not good ground for motion for new trial, where there was no challenge to the array as drawn, especially where the number drawn from those wards was not out of proportion to the population.

**20. Criminal law ⬤⟶1144(10) — Not assumed that trial judge failed in duty of policing his own court.**

The trial judge is charged with the duty of policing his own court, and Supreme Court will not presume that he failed in his duty when he denies that deceased's relatives crowded near the jury, prejudicing and biasing them.

**21. Criminal law ⬤⟶923(4)—Not sufficient to show jurors' relationship unknown until after jurors accepted.**

On motion for new trial on ground that jurors were related to deceased's family, it was not sufficient for counsel to make affidavit that knowledge of the relationship reached him after the jurors were accepted, and he should have sworn that it reached him only after verdict, especially where the jurors were only related to the wife of deceased's brother, and not absolutely incompetent.

**22. Criminal law ⬤⟶956(10)—Counsel's affidavit as to other counsel's knowledge of fact not the best evidence.**

On motion for new trial on ground that jurors were related to deceased's brother by marriage, affidavit of one counsel that to the best of his knowledge and belief the relationship was unknown to another counsel was not the best evidence.

O'Niell, C. J., dissenting in part.

Appeal from Fifteenth Judicial District Court, Parish of Beauregard; Thos. F. Porter, Jr., Judge.

Carl Holbrook was convicted of murder, and he appeals. Affirmed.

Thomas Arthur Edwards, of Lake Charles, and Elmer L. Stewart, of De Ridder, for appellant.

A. V. Coco, Atty. Gen., Griffin T. Hawkins, Jr., Dist. Atty., of Lake Charles, and Mark C. Pickrel, Asst. Dist. Atty., of Oakdale (T. S. Walmsley, of New Orleans, and Sam H. Jones, of De Ridder, of counsel), for the State.

ST. PAUL, J. Defendant was convicted of murder, without capital punishment, and appeals.

### Bill of Exception No. 1.

[1] Defendant asked for a change of venue on the ground that the clerk of court, chief deputy clerk, sheriff, coroner, president of the police jury, vice chairman of the Democratic executive committee, and judge of the city court were all near relatives of the deceased, and that the deceased had a large family connection in the parish, all of whom were actively interested in the prosecution of the defendant, and were discussing the case with prospective jurors in order to influence them against defendant, who was comparatively unknown in the parish.

The evidence shows that the aforesaid relatives of the deceased were not taking any active interest in the prosecution of the defendant, beyond employing, as they had a right to do, the city judge aforesaid to assist the district attorney in prosecuting the defendant, and that they were not discussing the case with prospective jurors, or any other persons whatsoever, but only among themselves, and that some of them had not even done this.

The evidence even of defendant's own witnesses was that they had seen no activity on the part of the aforesaid officials, and did not believe that they were men to do anything to prejudice the case of the defendant; that they knew of no general sentiment in the parish hostile to the defendant, but that the sentiment seemed to be about evenly divided as to the guilt or innocence of the defendant; and that, although it might be difficult to secure a jury on account of that divided sentiment, and the fact that the deceased had many relatives in the parish, yet it would be possible to do so; that the jurors of the parish were not likely to be influenced in a matter of this sort by the views of the parish officials; and the fact remains that a jury was secured after an examination of only 57 jurors, of whom 29 were challenged for cause by the state, or by the defendant, 4 challenged peremptorily by the state, and 12 by the defendant, and 12 accepted. Nor does the examination of these jurors on their voir dire tend to show that there was any general sentiment in the community against the defendant. The trial judge in his per curiam states that his own knowledge of the situation is that the defendant could obtain a fair trial in the parish.

In State v. Foreman, 45 La. Ann. 1047, 13 South. 797, this court held that:

"Applications for change of venue on the ground of local prejudice are addressed to the sound discretion of the trial judge, and if he has not manifestly abused that discretion this court will not interfere with his ruling. When the evidence is contradictory and inconclusive, and the judge bases his ruling not only on the evidence, but on his own knowledge of the facts and circumstances, it would require a very extreme case to authorize our interference."

Here the trial judge did not find it necessary even to rely upon his own knowledge, for the evidence adduced was not conflicting, but wholly against the necessity for a change of venue, except that of one witness, who testifies that he has not been out of his own neighborhood, did not hear any discussion of the case by any one, and gives as his reason for believing that the accused could not obtain a fair trial the fact that the deceased has many relatives, and "just nature" leads him to believe so.

In State v. Causey, 43 La. Ann. 897, 9 South. 900, this court said:

"The fact that a fair and impartial jury has been obtained, pending a motion for a change of venue, is a sufficient answer to refuse the application. Its actuality demonstrates its possibility."

We are therefore of opinion that the trial judge properly refused the change of venue.

### Bill of Exception No. 2.

[2] The trial judge refused to accept affidavits offered by the defendant on his motion for a change of venue. This was proper; the witnesses should have been produced in open court that they might be cross-examined on the subject-matter. State v. Ford, 37 La. Ann. 443. There is nothing whatever in conflict with that case in State v. Wheat, 111 La. 860, 35 South. 955, which holds only that no preliminary affidavit is required of the state, though required of defendant, but distinctly holds that the state must make out its case by evidence taken in open court contradictorily with the defendant, which is in full accord with State v. Ford, supra, holding that the same rule applied to the accused.

### Bills of Exception Nos. 3, 4, 5, 6, 7.

[3, 4] These bills are all reserved to the refusal of the trial judge to maintain defendant's challenges for cause to certain jurors, on the ground that said jurors had fixed opinions.

The jurors all declared that they had formed opinions, but that said opinions would yield to the evidence. The juror Durham West had spoken to his aunt, who was supposed to be called as a witness, but had told him she knew nothing of the case, and the fact that his aunt might be called as a witness (perhaps on some collateral matter) did not disqualify him.

In State v. Rini 153 La. 57, 95 South. 401, this court held in substance, whilst ruling on 37 bills relating to the competency of jurors who had formed opinions, that:

"Jurors who testified that they had formed opinions in a murder case from newspaper reports or hearing the case discussed, and some of whom testified that it would take evidence, or strong, positive, or convincing evidence, to remove such opinions, but who also testified that they could disregard their opinions and decide the case according to the law and the evidence, held not disqualified."

See syllabus No. 11.

This is in accord with the general rule as laid down in 16 Corpus Juris, 1154, § 2650:

"An opinion of a juror with regard to defendant's guilt, which will constitute a disqualification sufficient to furnish ground for a new trial, must be a fixed, deliberate, and determined one, which cannot be removed or overcome by evidence."

See, also, State v. Bunger, 14 La. Ann. 461; State v. Caulfield, 23 La. Ann. 148, and State v. Lartigue, 29 La. Ann. 642.

The ruling in State v. Rini must therefore be accepted as the law in this state, and the challenges to the jurors herein were properly overruled.

### Bill of Exception No. 8.

[5] This bill was taken to a ruling of the court excluding a question by the defense put to a state witness (who had already testified, as had others, that the bullet fired by the defendant severed two large arteries in the groin of the deceased) whether the wound would have been fatal had the bullet missed either one of those arteries. The question was purely hypothetical and immaterial, and was therefore properly excluded. If the defendant shot in self-defense, he had a right to kill; if he shot deliberately, the actual result of the shooting was the only thing material.

[6] This bill is also taken to the admission of the blood-stained clothing of the deceased, as not having been properly identified, and as serving to bias and prejudice the jury. The trial judge says that the clothing was

identified by several witnesses, and was introduced to corroborate the testimony of the state witnesses as to the position of the deceased when he was shot. The clothing was properly admitted in evidence. State v. Willis, 152 La. 784, 94 South. 395.

### Bill of Exception No. 9.

[7] The theory of the state was that the defendant had hunted up the deceased and killed him for having poisoned his (defendant's) hunting dog. The defense was that defendant had sought the deceased to obtain an explantion about the killing of the dog, and during the discussion had shot the deceased in self-defense, when the latter made a hostile demonstration.

The complaint in this bill is substantially that the defendant was not allowed to go into the details of the poisoning of the dog. But he was allowed to testify fully as to the fact of such poisoning, his purpose in seeking the deceased, and all the circumstances of the meeting and killing. Only the above details were excluded, and they were properly excluded, being wholly irrelevant to the question whether or not defendant had sought the deceased for the purpose of killing, or merely to discuss the matter with him, as he claimed.

### Bill of Exception No. 10.

[8] The defendant being on the stand, the state was permitted to ask him whether or not he had been arrested in Fullerton for violating the law, to which the defendant answered that he was charged with speeding and paid a fine.

The defendant had previously been asked by his own counsel whether he had ever been convicted of any crime, in this state or any other, to which he answered he had not.

In his per curiam to bill No. 14 the trial judge says:

"The defendant offered testimony to show that he had not been convicted in this or any other state in the Union, and asked that the court charge on the law in regard to suspended sentences, and this was done." ⸱

We think this question and others of a similar nature were properly permitted under the circumstances. Moreover, as defendant answered them satisfactorily to his own interest, we cannot see that any injury was done him.

### Bill of Exception No. 11.

[9] The complaint is that the testimony of Buster Sanders, given after the defense had closed its case, was merely cumulative, and not rebuttal.

The defendant had testified that he had just stopped his car when the deceased came up, and Sanders was called to testify that the car had been stopped some time before the deceased came up.

On its face the evidence was clearly rebuttal evidence, intended to disprove the evidence given by the defendant. The fact that several witnesses had previously testified to the same effect may also make the testimony cumulative, but does not, merely on that account, deprive it of its rebuttal character. The state had originally introduced sufficient evidence, if uncontradicted, to prove the fact contended for; but the defendant denied the fact with such detail of circumstances as might have overcome that testimony. We therefore think that the state had a right to rebut such testimony by calling additional witnesses, whose testimony was not deemed necessary at first, and became so only after the defense was closed. The defense had given to the testimony a new aspect by other evidence which it was not possible or necessary for the state to anticipate. The state was therefore entitled to rebut this new testimony. See People v. Page, 1 Idaho, 189, 194.

### Bills of Exception Nos. 12 and 13.

[10] The associate counsel for the state in his opening remarks said, "The defendant

shot him [the deceased] in cold blood," and the district attorney said in the course of his argument, "This is a case of cold-blooded murder." The trial judge held that the argument was permissible.

It is evident that counsel were not giving testimony in the case, but merely commenting on the evidence as they appreciated it, and hence their remarks were perfectly proper. State v. Morgan, 145 La. 585, 82 South. 711; State v. Horton, 151 La. 683, 92 South. 298.

### Bill of Exception No. 14.

[11] Defendant complains that the jury was charged at the late hour of midnight; but the charge was given immediately after the arguments closed, and no objection was made at the time.

[12] Defendant excepted that the judge had not charged properly as to the law of self-defense, but did not point out any error or omission therein, although requested by the court to do so.

Defendant is therefore without standing before this court on these two matters.

[13] Defendant excepted to that portion of the judge's charge wherein he said, "No man has the right to kill another merely because he had poisoned his dog." It is not very material, but the trial judge says, and the written charge shows, that he charged as follows:

"I charge you that the mere poisoning of a dog will not justify the killing of a man, nor will the killing of a dog mitigate an unlawful killing from murder to manslaughter."

This is complained of as being a comment on the evidence. We do not think so. The charge is given in full in the transcript, and shows that the jury were instructed that they were the exclusive judges of the facts, and that the court could not even comment upon the evidence, or what it showed.

The fact is that the state's theory was that the defendant had killed because of the poisoning of the dog, and that of the defense

that the killing was in self-defense, and the judge charged on both phases.

Taken with the other portions of the charge, this clause meant no more than this: That if the jury did not find that the accused acted in self-defense, then the poisoning of the dog did not justify the killing, or reduce the killing to manslaughter. And there is not the slightest suggestion, in this or in any other portion of the charge, that the judge thought that the accused had shot the deceased merely because the latter had poisoned his dog.

We see nothing objectionable in the charge; it is neither a comment on the evidence, nor an expression as to what facts were proved. State v. Irvine, 126 La. 434, 441, 52 South. 567; State v. Dennison, 44 La. Ann. 135, 10 South. 599; State v. Mitchell, 41 La. Ann. 1073, 1076, 6 South. 785; State v. Briscoe, 30 La. Ann. 433, 435; State v. Morris, 27 La. Ann. 480, 481.

[14] Defendant complains that the judge did not charge on the law of circumstantial evidence. The judge in his per curiam says:

"No such request to charge was ever made of the court, * * * and no bill is signed on that point."

Moreover, there is nothing in this record to show that such a charge would have been at all applicable in this case.

### Bill of Exception No. 15.

This will be considered last.

### Bill of Exception No. 16.

[15] This bill was taken to the overruling of a motion in arrest of judgment on the ground that in the indictment the word "feloniously" did not immediately precede the words "kill and murder"; the words "and of his malice aforethought" intervening. The indictment was not defective. Our statute provides (R. S. art. 976) that:

"The forms of indictment (divested however of unnecessary prolixity) * * * shall be ac-

cording to the common law, unless otherwise provided."

In the appendix to Chitty's Edition of Blackstone we find the form of an indictment for murder at common law, wherein the adverb "feloniously" does not immediately precede the verbs "did strike, thrust, stab," etc., but the words "willfully and of his malice aforethought" intervene. State v. Dunkley, 25 N. C. 116. See, also, R. S. art. 1048.

[16] Again defendant complains that he was not rearraigned after his motion for change of venue was denied. But the judge states that defendant's plea had never been withdrawn. Indeed, under R. S. art. 1031, no change of venue can be awarded until a plea of not guilty be entered, and any application made for a change of venue before such plea shall itself stand as a plea of not guilty.

[17] It is said in defendant's brief that the judgment awarding costs against defendant is at variance with the verdict, which said nothing of costs. That part of the judgment was mere harmless surplusage. Under R. S. art. 979, every judgment of conviction shall subject the person convicted to the payment of all costs of prosecution, whether so stated in the sentence or not.

This bill is therefore without merit.

### Bill of Exception No. 17.

This bill concerns a renewal of the motion for a change of venue after the examination of the jurors on their voir dire, which has already been considered under bill of exception No. 1.

### Bill of Exception Marked A.

This bill covers the same matters already gone into in bill No. 10.

### Bill of Exception No. 15.

This bill is taken to the refusal of the court to grant a new trial, applied for on nine grounds.

[18] 1—That the verdict was contrary to the law and the evidence. The law of the case is covered and discussed in rulings on the different bills of exception. We have nothing to do with weight and sufficiency of the evidence.

[19] 2—In this paragraph, and in paragraphs 6 and 9, defendant again reverts to his motion for a change of venue assigning as additional reasons therefor that he was compelled to accept as jurors personal friends of the deceased, and that the jurors were selected principally from ward 2, where the deceased resided at the time, from ward 3, where the parish seat is situated (De Ridder), and where the official relatives of the deceased resided, and from ward 7 (containing Merryville), where the deceased was born and reared, and where he still had many relatives.

We find nothing in the record to show that defendant was compelled to accept as jurors any personal friends of the deceased. The trial judge says:

"There is no evidence, in the record or out of it, so far as I know, to that effect."

There is nothing on the record to show that any more jurors were selected from the three wards than they were entitled to in proportion to population. These three wards paid over four-fifths of all the poll taxes paid in 1921 (even though poll tax payments were very light in Merryville), and the proportion of jurors from these wards was about three-fourths. Lists of jurors for other occasions were in about the same proportion. But in any event there was no challenge to the array as drawn; and we are not prepared to say, even had there been such disproportion as claimed by defendant, that this would have been ground for a challenge to the array, unless this had been fraudulently done, which is not even claimed here.

3—This relates to the challenges to jurors for cause and is covered by bills Nos. 3 to 7.

4—The testimony of the defendant, which is copied in full in the transcript, shows that he was denied no opportunity to give in full to the jury his version of the homicide. The rest of this paragraph and all of paragraph 5 are covered by bill No. 14.

[20] 7—Defendant complains that the relatives of the deceased, including officials, crowded between the defendant and the jury, thus illegally prejudicing and biasing the jury. The trial judge says:

"The jury was not crowded, and there was no one sitting near the jury. No effort was made to influence them during the trial by any one in an illegal way."

The judge is charged with the policing of his own court, and we will not assume that he failed in his duty.

[21, 22] 8—The motion for a new trial sets forth that Jurors Simmons and Dear, who sat in the case and participated in the verdict, were respectively uncle and first cousin to the wife of the brother of the deceased; that they falsely answered in their voir dire that they were not related to the Welborn family in any way by blood or marriage; that the defendant had no knowledge of the relationship until after the verdict was rendered. This was sworn to by the defendant, and annexed to the motion is the affidavit of one of his counsel that he had no knowledge of such relationship before the said jurors accepted, and that to the best of his knowledge and belief this relationship was unknown to the other counsel for the defendant. The latter did not make any affidavit at all.

In State v. Nash, 45 La. Ann. 1143, 13 South. 732, 734, the rule was laid down that, in order to entitle the defendant to a new trial on grounds of that kind, the defendant must allege and prove: (1) That the juror was legally incompetent; (2) that this fact was unknown to defendant and his counsel until after verdict; (3) that the juror was questioned on the point and answered that he was competent.

In State v. Scarborough, 152 La. 669, 94 South. 204, it was held that distant relationship to the deceased, unaccompanied by bias, was not a disqualification for a juror, but the matter lay in the discretion of the trial judge. See Act 135 of 1898, p. 216. These jurors answered on their voir dire that they had no bias against the accused, and may have forgotten or disregarded this remote connection.

But, be this as it may, it was not sufficient for counsel to state merely that the knowledge of this relationship reached him only after the jurors were accepted. He should have sworn that it reached him only after the verdict.

Moreover, as to one of the counsel there is no affidavit whatever, since the affidavit of the other counsel, "to the best of his knowledge and belief," is not the best evidence. See Booby v. State, 4 Yerg. (Tenn.) 111, 113.

In a supplemental brief, filed by defendant, our attention is called to State v. Latham, 124 La. 876, 883, 50 South. 780, wherein the court remanded a case, not for a new trial upon the whole case, but for a rehearing upon the motion for a new trial, without there having been presented any affidavit of counsel that they did not obtain knowledge of the incompetency of a juror until after verdict.

That case is distinguishable from this, in that the juror in that case was absolutely incompetent, whereas such is not the case here. But upon this point, and the question of following that case, this court has long and seriously deliberated herein, and it is our conclusion that the case furnishes only an unsound and dangerous precedent, which might lead to serious embarrassment in the administration of justice, and that it should not be followed.

### Decree.

The judgment appealed from is therefore affirmed.

O'NIELL, C. J. (dissenting from the ruling on the judge's charge to the jury). It is said in the majority opinion, and it is true, that the contention of the district attorney was that the provocation for the homicide was that the deceased had poisoned defendant's dog. It is also said in the majority opinion, and it is true, that the defendant contended that he had done the killing in self-defense, in a discussion over the poisoning of his dog.

Under those circumstances, I respectfully submit that the judge should not have injected into the case an untenable proposition which the defendant had not contended for. The judge said to the jury:

"I charge you that the mere poisoning of a dog will not justify the killing of a man, nor will the killing of a dog mitigate an unlawful killing from murder to manslaughter."

If the defendant had contended for any such justification or mitigation, and if the district attorney had requested a special charge on the subject, the judge would have been right in instructing the jury on the question at issue. Even then, I would doubt that the judge should say that any specified provocation could not, under any circumstances, reduce a felonious homicide from murder to manslaughter. Be that as it may, the special charge which the judge gave put the defendant in the position of contending—when in fact he did not contend—that the poisoning of a man's dog justified killing the poisoner, or, at least, was a sufficient provocation to make a homicide manslaughter instead of murder. Moreover, the special charge was virtually a statement that the poisoning of defendant's dog was the only provocation for the homicide.

The familiar rule in that respect is that the trial judge is not required to give to the jury a special charge that is not appropriate to any issue in the case. I submit that the rule ought to work both ways; that it is as wrong and unjust to the defendant for the judge to give an unfavorable or detrimental charge that is not appropriate to any issue in the case as it is for the judge to refuse to give a favorable charge that would be appropriate to an issue in the case. The special charge given in this case was very detrimental to the defendant, because it was so apt to leave a false and unfavorable impression upon the jury. The premise for the charge was so unique—sui generis, may I say—in its supposed facts that it must have been the very center of gravity for the deliberations of the jury.

In other respects, I would concur in the majority opinion and decree.