Nov. Term, 1855.

Romaine
v.
The State.

Romaine *v.* The State.

Under the code of 1852, either party, on the trial of a criminal prosecution, may ask each juror whether he has formed or expressed an opinion of the guilt or innocence of the accused; but if the inquiry is not made, and the jurors are accepted and properly sworn to try the cause and render a verdict, they are, in legal contemplation, duly impannelled, and their qualifications as jurors can not afterward be controverted on a motion for a new trial.

If upon an examination under oath, on the trial of a criminal prosecution, a juror falsely declares that he has not formed or expressed an opinion as to the guilt of the accused, the verdict, if against the accused, will be set aside, on a motion for a new trial, made at the proper time.

When the evidence, whether the juror made such false declarations, is conflicting, the decision of the Court below thereon will be respected in like manner as in the case of trials of issues of fact by the Court in civil cases.

Indictment for murder. Verdict and judgment against the prisoner. Motion to set aside the judgment, on the ground that a juror, before the trial of the cause, had formed and expressed an opinion that the prisoner was guilty, and that he should be hanged, &c. Motion overruled. The evidence was not set out in the record.

*Held*, that it must be presumed that the evidence established the guilt of the prisoner.

*Held*, also, that the circumstance that the juror had formed and expressed an opinion as alleged, was not, of itself, a ground for setting aside the judgment.

The application for a new trial, in criminal cases, by the R. S. 1852, must always be made before judgment.

APPEAL from the *Allen* Circuit Court.

DAVISON, J.—*Madden, Keefer*, and *Romaine* were, at the *February* term, 1855, indicted, in the *Allen* Circuit Court,

Tuesday,
November 27.

Nov. Term, 1855.

ROMAINE
v.
THE STATE.

for murder. Verdict, that the defendants were g charged, &c., and that each of them suffer deat Court rendered judgment upon the verdict, and sentence. The time for the execution of *Mad Keefer* was fixed on the 27th of *April;* that of *Romaine* on the 15th of *June*. The two former were executed on the day appointed; but *Romaine*, in view of this appeal, has been respited.

At an adjourned session of the same term, but after the above executions had occurred, *Romaine* moved to set aside the judgment against himself, and for a new trial. Under the latter motion, he filed these reasons: 1. That the verdict was contrary to law and evidence. 2. That the jury was not legal and impartial; that some of them, before they were impanneled, had formed and expressed an opinion as to the guilt of the defendant.

*Romaine*, in support of his motion, produced his own and the affidavits of two others. He deposed that *Joseph Singmaster* was one of the jurors, each of whom was sworn to answer questions touching his qualifications, &c.; and that, being interrogated under oath, each one of them swore that he had not formed or expressed an opinion as to the guilt or innocence of either of the defendants; that the affiant had accepted the jury in good faith, and in the belief that they were impartial men, nor did he suspect any thing to the contrary, until long after he was sentenced; that within fifteen days prior to the making of this affidavit, and not before, he heard that *Singmaster*, the aforesaid juror, before he was so sworn, had expressed opinions, to the effect "that the defendants were guilty of murder as charged, and should all be hung; and that if he was called to act as a juror in the case, he would hang all of them;" that affiant would have challenged *Singmaster* for cause, had he known or suspected that such expressions had been used; and that he also believes that his counsel was ignorant of any such opinion having been expressed. The affiant, therefore, believing that he has not been fairly tried, prays that the above sentence and verdict be set aside, and a new trial granted, &c.

Two additional affidavits were filed with the motions. These show that *Singmaster*, about a week before the trial, stated "that the defendants, then imprisoned on the charge of murder, ought to be hung, and if he was put on the jury, he would sit there three weeks before he would give up." We are of opinion that the evidence given on the hearing of the motions, abundantly proved that the juror so expressed himself, and, further, that *Romaine* and his counsel were wholly unadvised of his statements until after the 27th of *April*, 1855, the day on which *Madden* and *Keefer* were executed. But the state resisted the motions mainly on the ground that the question, whether said juror "had formed or expressed an opinion of the guilt or innocence of the defendant," was not propounded to him. In relation to this point, both parties introduced testimony. Two witnesses, who were present when the jury was impanneled, one of them as counsel in the cause and the other for the purpose of taking down the evidence, testified affirmatively that *Singmaster*, in answer to an interrogatory by *Romaine's* attorney, stated that he had not formed or expressed an opinion of the "guilt or innocence of the prisoners;" but, on the other hand, three witnesses, two of whom were counsel for the state, testified that the jury was called, impanneled, and accepted in their presence, and that the question, whether the juror had formed or expressed such opinion, was neither asked nor answered. Many circumstances are referred to in the testimony on both sides, some of them tending to strengthen the evidence in favor of the motions, and others to weaken it. For instance, *Withers*, a witness for the defendant, stated, "that he was surprised at the time to hear a man living so near town, say he had not formed an opinion;" while *Jacoby* and *Wilson*, the counsel for the state, testified that in a conversation had between them relative to the jury, immediately after they were accepted, it was remarked by the former and conceded by the latter, that no inquiry had been propounded to *Singmaster* as to whether he had formed or expressed such opinion.

The state having closed her testimony, the defendant

Nov. Term,
1855.

ROMAINE
v.
THE STATE.

offered to prove "that *Henry McEwen*, another of the jurors, after the alleged murder, and before the trial of the cause, upon reading a newspaper account of the crime charged against the defendants, said, 'that they ought to be hung, and if he was on the jury he would hang them all;' that when *McEwen* was placed in the jury box, he declared on oath that he had not formed or expressed an opinion as to the guilt or innocence of the defendants."

To the introduction of this evidence the state objected, unless time was given her to procure certain witnesses by whom she expected to resist it; and in support of her objection, her attorney filed an affidavit alleging, in substance, that the defendant, after his motions were taken up for hearing, had amended his second reason for a new trial, thereby basing the same upon the alleged disqualification of more than one juror; and that in consequence of said amendment, the state was unprepared to counteract the proposed evidence, which the affiant verily believed she could do if allowed a reasonable time to procure the attendance of the said *McEwen* and others as witnesses; that the affiant was not advised of any one save *McEwen* himself by whom it could be proved that he, *McEwen*, had not formed or expressed an opinion as alleged, &c.; that he resided fifteen miles distant from that place, and affiant supposed his testimony could be procured within twenty-four hours. The Court, upon the filing of this affidavit, ruled that the defendant could then introduce the proposed evidence, on condition that time should be given the state to procure testimony as suggested by the affidavit; but the defendant having objected to any delay for that purpose, the Court rejected the evidence, and also refused to continue the original motions, and thereupon overruled them.

Was *Singmaster*, before he was impanneled as a juror, interrogated on the point, whether he had formed or expressed an opinion of the guilt or innocence of the prisoners? This is the first question to be considered. Under the code, either party may ask each juror that question, or he may waive it. 2 R. S. 372. If the inquiry is not

made, and the jurors are accepted and sworn, in the proper
mode, to try the cause and render a verdict, they are, in
contemplation of law, duly impanneled, and their qualifi-
cations as jurors can not be made the subject of contest,
on a motion for a new trial.    Where, however, upon ex-
amination on oath, a juror falsely declares that he has not
so formed or expressed an opinion, the verdict, such motion
being made at the proper time, will be set aside.    *Busick*
v. *The State*, 19 Ohio 198.    On the hearing of these mo-
tions, there was, it will be seen, an obvious conflict between
the testimony on the part of the defendant and that pro-
duced by the state.    But the inquiry presented to the Court
did not involve the guilt of the accused; it was in effect a
mere incidental issue—one proper to be decided according
to the weight of evidence.    It was competent for the Cir-
cuit Court, in the case before it, to reconcile the conflict,
and weigh the testimony as in the trial of civil cases.
That Court has heard the witnesses, observed the man-
ner in which they testified, and upon a pure question of
fact, has given a decision which is not plainly erroneous.
Hence we are not inclined to disturb its conclusions.    But
in addition to this, the jury were impanneled in the pres-
ence of the Court; and may it not be fairly presumed
that the judge himself was sufficiently advised on the sub-
ject before him, to give a correct response to the inquiry,
whether the juror was or was not interrogated as alleged?

The next question relates to the refusal of the Court to
permit the defendant to show the previously expressed
opinions of the juror, *McEwen*.    No error appears in this
branch of the case.    The reasons for a new trial designate
no juror by name; but *Romaine's* affidavit, filed with his
motion, and in support of it, relied for a new trial alone
on *Singmaster's* want of qualification.    The record shows
that up until the state had closed her testimony, he was
the only juror named in the proceedings against whom
there was any complaint.    And it was by the offer to
prove *McEwen* not impartial, that she received the first
intimation that his qualifications as a juror would be con-
tested.    The state could not know, or even infer, from any

paper on file in the case, that such evidence would be offered; hence she was unprepared to meet it. Whether the evidence was, at the time it was proposed, at all admissible, is not very clear; but suppose it was, there seems to have been an obvious propriety in giving the state a reasonable time to procure the rebutting testimony indicated in her attorney's affidavit. The Court, it is true, in its offer to admit the defendant's evidence on condition that there should be a continuance in favor of the state, designated no specific time to which that continuance might extend, but of this the defendant had no right to complain, because he refused to submit to any delay. It was, therefore, needless for the Court to make any order on the subject.

The record presents another question: was the motion for a new trial made too late? The first motion, however, was to set aside the judgment. It is said that "the power of the Court to alter, amend, or set aside a judgment, at the same term at which it was rendered, is well established and is always exercised in a proper case made." In the abstract, this position is correct. But is the present a case in which a Court can legally exercise such authority? The judgment before us is legal upon its face, and for aught that appears, is founded on a proper verdict. The mere fact of a juror having, before the trial, formed or expressed an opinion that the accused was guilty, will not be allowed to affect the judgment, because the verdict on which it is based, notwithstanding such preopinion, may have been fully sustained by the proofs. Indeed, the evidence not being on the record, we must presume that it was sufficient to establish the guilt of the defendants.

The judgment itself is therefore without objection; and there can be no pretence to set it aside, unless to give effect to the motion for a new trial. For that purpose, alone, it seems to us that the Circuit Court, in the case before it, had no authority to annul the judgment. The code provides that "the application for a new trial must be made before judgment." 2 R. S., p. 380, s. 143. This provision is very explicit, and appears to leave no room for

construction. It plainly means, that no motion for a new trial shall be made after judgment.

It is contended, however, that the above enactment "was designed only to apply to cases where the reasons for the motion are known before the judgment is rendered;" that this is an "omitted case," to be governed by the laws and usages of the state prior to the revision of 1852. This construction can not be sustained. The legislature have distinctly pointed out the time within which the defendant may move for a new trial, and we know of no rule of practice on the subject, now in force, other than that contained in the revision of 1852. The appellant illustrates his argument thus: "*A.* is indicted for murder, and on the testimony of *B.* and *C.*, who swear that they saw him strike the fatal blow, he is convicted, and sentence is pronounced; but subsequently, and before the term closes, *D.*, the real murderer, comes into. Court, confesses his guilt, while *B.* and *C.* acknowledge that they lied or were mistaken. Would the statute render the Court powerless in a case like this?" We answer, it is needless to inquire what this Court would do, if the record contained evidence *showing the defendant to be guiltless* of the crime of which he stands convicted. Such evidence is not now before us. We are simply called on to decide whether in the case presented to the Circuit Court, the defendant was entitled to a new trial. In our opinion he was not.

*Per Curiam.*—The judgment is affirmed with costs.

*C. Case* and *W. H. Withers*, for the appellants.

*J. W. Gordon* and *D. C. Chipman*, for the state.