ACHEY v. THE STATE.

CRIMINAL LAW.—*Murder.*—*Evidence.*—*Reputation of Defendant for Peaceableness.*—*Cross-Examination.*—*Harmless Answer.*—On the trial of a defendant indicted for murder, wherein a witness had testified on behalf of the defendant, that he was a peaceable man, the counsel for the State, on cross-examination, asked the witness whether there was any difference between the defendant's disposition when intoxicated and when sober, to which the answer was that he was peaceable when intoxicated.

*Held,* that the question and answer, taken together, were harmless.

SAME.—*Instruction.*—*Statute Defining Murder and Prescribing the Penalty.* —An instruction to the jury in such case, reciting section 2 of the act defining felonies, 2 R. S. 1876, p. 423, being the statutory definition of murder in the first degree, and declaring the penalty therefor to be death, is correct as far as it goes, and is not erroneous as an independent instruction.

Achey *v.* The State.

Same.— *Additional Instruction.*—The giving of an additional instruction, referring to such previous instruction, and reciting section 4 of such act, giving the jury the power to fix the penalty at imprisonment in the state-prison for life, in effect constituted both one proper instruction.

Same.—*Malice.—Reasonable Doubt.—Provocation.— Consequences of Act.—* For instructions given at length and commended, see opinion.

Same.—*New Trial.—Misconduct of Juror.—Affidavit.*—An affidavit in support of a motion for a new trial on the ground of misconduct of a juror should clearly identify the juror guilty of the alleged misconduct, and should clearly specify the facts alleged to constitute misconduct.

Same.—*Juror's Expression of Opinion.*—Affidavits charging that one of the jurors, prior to the empanelling of the jury, had expressed an opinion that the defendant was guilty and should be hung, should unequivocally allege that the defendant and his counsel were ignorant of that fact prior to the empanelling of the jury.

Same.— *Weight of Evidence.—Supreme Court.*—Where such motion, both supported and resisted by affidavits, has been denied by the court, the Supreme Court will not disturb such decision on the mere weight of the evidence afforded by such affidavits.

From the Marion Criminal Circuit Court.

*W. S. Ryan* and *C. B. Rockwood,* for appellant.

*T. W. Woollen,* Attorney General, and *J. B. Elam,* Prosecuting Attorney, for the State.

Biddle, J.—Indictment against the appellant for murder in the first degree, charged to have been committed in unlawfully, wilfully, feloniously, purposely, and with premeditated malice, killing George Leggett, by shooting him with a pistol.

Plea, not guilty; trial by jury; verdict, guilty; punishment, death.

Motion for a new trial; overruled; exceptions; judgment; appeal.

Numerous questions are reserved in the record, but all that have been discussed on behalf of the appellant arise under the motion for a new trial, and are as follows:

1. That the court admitted improper evidence to go to the jury;

2. That the court gave improper instructions to the jury;

3. The misconduct of the juror, Frederick Stein, during the trial;

4. The misconduct of the juror, Thomas Dawson, during the trial; and,

5. That the evidence is not sufficient to sustain the verdict.

1. That the court admitted improper evidence:

Daniel M. Noe was called as a witness, on behalf of the appellant, to testify as to his general character, and was asked the following questions:

" Q. Are you acquainted with the defendant's reputation for peacefulness and quietude as a citizen ?

"A. I am.

" Q. Is that reputation good or bad ?

"A. I have always known him as a peaceable, quiet man."

In the course of the cross-examination of the witness, the prosecuting attorney asked him the following question :

" Q. Do you know whether there was any difference in his disposition when under the influence of liquor and when not ? "

To this question the counsel for the appellant objected, because it did not enter into the question of his general character ; but the court overruled the objection, and the witness answered :

"A. I have seen him when under the influence of liquor, and always saw him peaceable and quiet."

This ruling is not erroneous. It is very clear that the question and answer, taken together, did not injure the appellant. The authority cited, *Fahnestock* v. *The State*, 23 Ind. 231, does not sustain the views of appellant's counsel. In that case, the question of intoxication had reference to the deceased, and not to the defendant.

2. That the court gave improper instructions to the jury.

The instructions complained of are as follows :

" 1.   Upon this indictment, the defendant being arraigned, for plea thereto says that he is not guilty. The issue being thus joined, before the jury can find the defendant guilty as charged, the State must have proved, beyond a reasonable doubt, every material allegation contained in the indictment ; and until every reasonable doubt of defendant's guilt is thus removed, he is presumed to be innocent.

" 2.   Evidence is sufficient to remove reasonable doubt, when it is sufficient to convince the judgment of ordinarily prudent men of the truth of a proposition, with such force that they would act upon that conviction, without hesitation, in their own most important affairs.

" 4.   The indictment charges the highest degree of felonious homicide known to the law, to wit, murder in the first degree, and under it the jury, if the evidence requires it, may find the defendant guilty either of voluntary or involuntary manslaughter, or murder in the first or second degree.

" 8.   The word malice, in its popular sense, means personal spite, hatred, ill-will or hostility to another ; yet, in its legal sense, it has a wider meaning, and characterizes all unlawful acts done with an evil disposition, a wrongful and unlawful motive, and such as proceed from ' a heart regardless of social duty, and fatally bent on mischief.'

" 13.   The accused is presumed to be of sound mind until the evidence raises a reasonable doubt thereof ; and the law also presumes that every sane person contemplates the natural and ordinary consequences of his own voluntary acts, until the contrary appears, and when one man is found to have killed another by acts, the natural and

ordinary consequences of which would be the death, if the facts and circumstances of the homicide do not of themselves, or the evidence otherwise, show that it was not done purposely, or create a reasonable doubt thereof, it is to be presumed that the death of the deceased was designed by the slayer.

" 14. If a purpose, design or intention is formed by the slayer to kill a human being, and the act is done with malice but without premeditation, the defence comes within our statute defining murder in the second degree ; but, if the element of premeditation is also present, then the offence is not murder in the second degree.

" 15. The statute defining murder in the first degree, and fixing the penalty, reads as follows :

" ' If any person of sound mind shall purposely and with premeditated malice * * * kill any human being, such person shall be deemed guilty of murder in the first degree, and upon conviction thereof shall suffer death.'

" 19. If you should find from the evidence that the defendant killed the deceased, and that a reasonable doubt exists, either of the sanity of the accused at the time of the alleged commission of the act, or whether or not it was justifiable or excusable, you should find him not guilty.

" 20. If the jury should find from the evidence, that the defendant and the deceased had been engaged in gaming with cards, and that deceased won from defendant a considerable sum of money, and all he had, and that afterwards deceased refused to loan to defendant even an inconsiderable portion of the amount won, and was offensive in language toward the defendant when applied to for the loan, such facts, on the trial of the defendant for the homicide, would of themselves neither justify nor excuse the killing."

The court also gave the following instruction to the jury, to which no exception was taken :

" 21. If the jury should find from the evidence, beyond a reasonable doubt, that the defendant is guilty of murder in the first degree, it is proper for you to consider, in fixing the penalty, the following section of the statute in the act defining felonies and fixing the punishment therefor, as follows:

" ' SEC. 4. Any person convicted of treason, or murder in the first degree, may instead of being sentenced to death, in the discretion of the jury, be imprisoned in the state-prison during life.'

" Although that section of the statute defining the offence of murder in the first degree fixes the penalty at death, under the section of the statute last read, if in your discretion you so determine, you may, instead of sentencing to death, substitute imprisonment in the state-prison during life. It is the exclusive province of the jury to determine for themselves the questions of penalty, as well as all other matters of law and fact arising in the case."

In our opinion, neither of the instructions, numbered 1, 2, 4, 8, 13, 14, 19 and 20, above, is erroneous; but we think that these, taken together, and with others given which were not excepted to, present a full and fair exposition of the law of the case. .

It is strongly urged in behalf of the appellant, that the instruction numbered 15, above, is erroneous in not stating the discretionary power reposed in the jury to inflict the punishment of death or imprisonment for life, for murder in the first degree, as the evidence might seem to warrant, and, being erroneous, can not be corrected by a subsequent instruction, unless the former instruction is withdrawn.

We fully recognize the principle, that an instruction which is wrong can not be corrected by an instruction which is right; but instruction 15 is not wrong, as far as it goes. The jury might follow it if they thought proper. It only purports to recite the statute, which it does correct-

ly, and does not instruct the jury, that if they find the defendant guilty of murder in the first degree, they shall make his punishment death, but only, that, by that section, the penalty was death. By instruction 21, the subsequent section, giving the discretionary power to the jury in fixing the punishment for murder in the first degree, is properly stated, and the section mentioned in instruction 15 referred to, and thereby made a part of instruction 21. It does not seem to us that there is any available error in this. This court has held that an instruction, which, as far as it is given, is not wrong, will not be held erroneous in this court, merely because it is not more full and complete. *Bissot* v. *The State*, 53 Ind. 408. So we think, that merely stating section 2 of the felony act, which is the only one that defines the crime of murder in the first degree, for the purpose of defining it to the jury, and also stating the penalty expressed in that section, which is separated from the definition of the crime only by a comma, and afterwards stating section 4 of the same act, which gives to the jury the discretionary power in fixing the punishment, when taken together, can not be regarded as erroneous.

In our opinion, the court did not err in instructing the jury. *Kirland* v. *The State*, 43 Ind. 146; *Bissot* v. *The State*, 53 Ind. 408; *Jarrell* v. *The State*, 58 Ind. 293; *Sullivan* v. *The State*, 52 Ind. 309.

4. The misconduct of the juror, Frederick Stein, during the trial.

We can not discover any ground charging the juror Stein, with misconduct. The affidavit of James W. Gray states that a " daily newspaper, published in said county and State, was produced by one of said jurors, who proceeded to read an article in and from said copy of said ' Indianapolis Journal ' to, and in the presence of, said jury; " but it does not state that the juror, who so produced and

read the paper, was Frederick Stein. The counsel for appellant, in their brief, treat the affidavit of Gray as if it meant Stein as the juror alluded to. Stein, in his affidavit, however, substantially denies the charge. Besides, the article alleged to have been read in the jury room has no reference to the appellant, and, if it had any influence on the jury, it would be hard to tell whether it was against the appellant or in his favor. We do not perceive any force in the charge of misconduct against Stein.

4. The misconduct of the juror, Thomas Dawson, during the trial.

Several affidavits, appended to the motion for a new trial, state that the juror, Dawson, before he was empanelled as a juror in the case, and some time before the trial, stated that the persons in prison at the time, of whom the appellant was one, had committed murder and ought to be hung, and other words unfavorable to the prisoners. These statements are denied by Dawson in his affidavit, which is supported by the affidavits of others.

There is no fair preponderance of evidence in favor of the charge of misconduct against Dawson as a juror in the case. Besides, it is nowhere stated that the appellant did not know all these facts before Dawson was empanelled as a juror.

The affidavit of James M. Biddy states " he did not inform said attorneys " (of appellant) " of the matters, until after the conclusion of said trial; " but this goes only to what Biddy stated, and by no means shows that the appellant and his attorneys did not know all the facts set up in the affidavits before the juror was empanelled. It does not seem to us that the conduct of the jurors injured the appellant in the least. In such case it must clearly appear that the party complaining was injured, or the judgment will not be disturbed. *Romaine* v. *The State*, 7 Ind. 63; *Bersch* v. *The State*, 13 Ind. 434; *Harrison* v. *Price*, 22 Ind.

165; *Whelchell* v. *The State*, 23 Ind. 89; *Flatter* v. *McDermitt*, 25 Ind. 326; *Medler* v. *The State, ex rel., etc.*, 26 Ind. 171; *Morgan* v. *The State*, 31 Ind. 193; *Clem* v. *The State*, 33 Ind. 418; *Cluck* v. *The State*, 40 Ind. 263; *Harding* v. *Whitney*, 40 Ind. 379; *Scranton* v. *Stewart*, 52 Ind. 68; *Holloway* v. *The State*, 53 Ind. 554; *Beard* v. *The State*, 54 Ind. 413.

5. That the evidence is not sufficient to sustain the verdict.

The killing, as alleged in the indictment, is proved beyond any doubt; indeed, the only point urged against the evidence is, that it does not sufficiently prove that the act of killing was done with premeditation. It is clear to us, that, at the time the act was done, there was no immediate provocation from the deceased, and no cause for a sudden heat upon the appellant. The palliating facts, if any existed, had occurred several days before the killing was done. Unfriendly words, but not remarkably high nor heated, had passed between the parties several hours before the killing, but not such as amounted to any justification or excuse, or even palliation, of the act. Having the deadly weapon prepared, shooting instantly when the opportunity offered, without any immediate provocation, or any thing to excite a sudden heat of passion, are strong facts against the appellant.

It appears to us that the jury was justified in finding that the killing was done purposely and with premeditated malice.

As an appellate court, there is no ground for us to disturb the verdict.

The judgment is affirmed, at the costs of the appellant.

Petition for a rehearing overruled.