ST. PAUL, J.
 

 The accused was duly indicted, tried, and convicted of murder, and sentenced to be hanged. His appeal presents six bills of exception, as follows: .
 

 Bill No. 1.
 

 The district attorney challenged the juror Louis Ortego for cause; the trial judge excused the juror on the ground that the juror “stated on his- voir dire that he was an intimate friend of the accused, and felt that under the circumstances he could not dp justice to [between] the accused and the state.”
 

 Aside from the manifest propriety of the ruling, the bill is yet without merit. In State v. Bagwell, 154 La. 980, 985, 98 So. 549, 551, we said:
 

 “Parties have no right to a trial by any particular juror or jurors, but only to a trial by
 
 *143
 
 a competent and impartial jury” — quoting 24 Oye. 251.
 

 It. is therefore not a ground of exception, Where the procuring of such jury was not prevented, that the court excused a juror who was competent to serve, or sustained a challenge for insufficient cause. Asevado v. Orr, 100 Cal. 293, 34 P. 777; McGrail v. Kalamazoo, 94 Mich. 52, 53 N. W. 955.
 

 Bill No. 2. ‘
 

 The accused objected to the state using as a witness one Evans Carricut, on the ground that he was immature and incompetent, for this, to wit, (1) That the witness is only nine years old, in the primer grade at school, and is unable to answer questions accurately without their being first put in the form of a leading question; (2) he is reluctant, hesitates on all questions asked, and clearly shows inability to be impressed with any facts.
 

 The trial judge overruled the objection, and allowed the witness to testify. He says:
 

 “The witness was examined at length as to his competency and understanding. The examination showed him to be a boy of average intelligence and fully qualified as a competent witness.”
 

 The examination referred to is in the record, and is here given in full, to wit:
 

 "Examination by the Court.
 

 “Evans Carricut, witness called on part of state, after being'duly sworn, testified as follows :
 

 “Q. How old are you, boy? (No answer.)
 

 “Q. Do you speak English? A. Yes.
 

 “Q. Where do you live? A. With my aunt.
 

 “Q. Did you go to school last session? A: Yes, sir.
 

 “Q. Who was your teacher last year? A. Miss Lena Smith.
 

 ■“Q; How long did you go to school to her? A: So long, I don’t know.
 

 , "Q. Could you read? A. Yes, sir.
 

 “Q. What grade were you in?. A. In the primer.
 

 “Q. Since you left Bunkie, did you gó to school? A. Yes. •
 

 “Q." Who was your teacher then? A. Miss Eontanne.
 

 “Q. What grade are you in now? A. In the primer.
 

 “Q. Do you know why you are placed on that chair? A. Yes, sir.
 

 “Q. To testify? A. Yes, sir.
 

 “Q. Do you know what an oath is? A. Yes.
 

 “Q. What is it ? You swore to say what ? To tell the truth? A. Yes, sir:
 

 “Q. And if you don’t tell the truth what will happen to you? A. I will go to jail.
 

 “Q. Who will punish you if you don’t tell the truth? A. God.
 

 “Q. You swore to tell the truth? A. Yes, sir.
 

 “Q. Now, will you tell the truth? A. Yes, sir.”
 

 Whereupon counsel for the accused objected, as aforesaid, and the court overruled his objection.
 

 In State v. William, 130 La. 2S0, 57 So. 927, this court'said:
 

 “A wise discretion is left to the trial judge in deciding the competency of a child of tender years to' testify, and where he examines the child and tests her understanding of the significance of an oath, and reaches the conclusion that she will be a competent witness, his ruling will not be set aside unless for very manifest error” — citing State v. Langford, 45 La. Ann. 1177, 14 So. 181, 40 Am. St. Rep. 277;. State v. Williams, 111 La. 181, 35 So. 505.
 

 In State v. William, 130 La. 280, 57 So. 927, the witness was said by the judge to be seven or eight years old; others thought she was about six. In State v. Williams, 111 La. 179, 35 So. 505, the witness was only eight years old, and
 
 did not lenow %is age.
 
 In both cases the testimony of the witnesses, on voir dire was brought up with the record, and is to be found in the report of the case, and their testimony showed them to be of about the same intelligence as the witness in the case before us.
 

 In State v. Richie, 28 La. Ann. 327, 26 Am. Rep. 100, the testimony of a child six-years old was received, and the court said:
 

 “Under the age of fourteen a child will not be presumed to have a sufficient understanding to be a witness, * * * and Ms admission or
 
 *145
 
 rejection roust depend upon the sound discretion of the judge.”
 

 It is therefore our conclusion that the rule announced in State v. William, 130 La. 280, 57 So. 927 (which is also the last expression of this court on that subject), is the correct rule in such cases. Which rule we find to prevail generally throughout the several states. See 40 Oye. p. 2200, notes, 55-59, and page 2204, notes 79-SS.
 

 •We see no manifest error, or error at all, in the ruling of the trial judge herein complained of.
 

 Bill No. 3.
 

 The verdict of the jury read as follows:
 

 “We, the jury, have found you guilty as •charge murder of first degree with capital punishment.”
 

 The complaint (on application for a new trial) was that the verdict is “vague and indefinite, and not responsive, inasmuch as there is in Louisiana no crime defined as murder in the first degree.”
 

 The (revised) statutes of this state
 
 on the
 
 subject of homicide are as follows:
 

 “Sec. 784. Whoever shall commit the crime of willful murder, on conviction thereof, shall suffer death.
 

 “Sec. 785. There shall be no crime lmown under the name of murder in the second degree; but on trials for murder the jury may find 'the prisoner guilty of manslaughter.
 

 “Sec. 788. Whoever shall be convicted of manslaughter shall be fined in a sum not exceeding $2,000 and imprisoned at hard labor not exceeding 20 years.
 

 “Sec. 1000. In all cases where the punishment denounced by law is death, it shall be lawful for the jury to qualify their verdict by adding thereto ‘without capital punishment.’ And whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to hard labor for life, in the state penitentiary.”
 

 In view of these statutes (and considering that upon a trial for murder the judge must charge the jury as to all the foregoing),, there is nothing vague or indefinite in the verdict complained of, since there can be no doubt whatever as to .what the jury meant.
 

 And since there is in this state (as also at common law) but one degree of murder, it follows that every murder is either murder-in the first and only degree, or not murder at all. The proof is that, had the addition-been “second degree,” it would then
 
 not
 
 have been responsive to the indictment. The addition “first degree” was therefore meresurplusage. It no more vitiated the verdict than did the other surplus addition “withe capital punishment.” See State v. Burns, 30 La. Ann. 679.
 

 Bill No. 4.
 

 The complaint is that the Juror L. A. Couvillon, who sat in the trial, “is a third cousin of the victim of the act for which the accused is being tried.” The trial judge says:
 

 “The juror stated, on motion for a new trial, that he was not aware of any relationship with victim until after the trial, and, while having been told so, he was still unaware of any degree of relationship. Eurtliermore, if he was, it is not within the prohibited degree under the-law.”
 

 The only other evidence as to relationship-is as follows:
 

 George Bordelon, testified:
 

 “Q. Do you know whether Mr. L. A. Couvillon is related to the deceased wife (victim) of the accused? A. Yes, sir; they are third cousins. Q. Can you explain to the court how he is related to the deceased? A. I really do not know how they are related. Q. You are-of the opinion, however, that they are related?' A. Yes; but I don’t know how.”
 

 The relationship complained of was therefore not proved. The mere opinion of a witness that two persons are related, the witness not knowing how they are related, is ho-proof of such relationship.
 

 In any' event, in State v. Scarborough, 152-La. 669, 94 So. 204, it was held that distant relationship to tlié deceased, unaccompanied
 
 *147
 
 by bias, was not a disqualification for a juror, but the matter lay in the discretion of the trial judge. See Act 135 of 1898, § 1, pp. 216, 217; and State v. Holbrook, 153 La. 1025, 97 So. 27.
 

 Moreover, it is not shown that the juror was examined on his voir dire touching this relationship. In State v. Nash, 45 La. Ann. 1143, 13 So. 732, 734, the rule was laid down that, in order to entitle the defendant to a new trial on grounds of that hind (even where the juror was absolutely incompetent on account of age), the defendant must allege and prove: (1) That the juror was legally incompetent; (2) that this fact was unknown to defendant and his counsel until after verdict; and (3) that the juror
 
 was questioned on the point,
 
 and answered that he was competent.
 

 In State v. Holbrook, supra, we said:
 

 “These jurors [distantly related to, or connected with, the deceased] answered on their voir dire that they had no bias against the accused, and may have forgotten or disregarded this remote connection.”
 

 In the case before us the juror had evidently forgotten, or perhaps never knew of, the remote relationship between himself and the deceased; if indeed any such relationship actually existed.
 

 It is complained of in the motion for a new trial, and in brief, that this juror was anxious to get on the jury. But the record not only does not establish that fact, but actually negatives it. If the evidence shows anything at all on this subject, it shows rather that the juror was
 
 not
 
 anxious to serve, as he was not favorable to capital punishment. Moreover, none of this is mentioned in the bill of exceptions; doubtless because it was thought not proved, as the trial judge must also have thought, since he refused the new trial.
 

 We see no error in the foregoing.
 

 Bill No. 5.
 

 The complaint in this bill is that;
 

 “Despite efficient and- careful precautions taken by the sheriff to prevent interference with the deliberations of the jury, several persons were seen in an attempt to either communicate or obtain information from the jury thus deliberating, and in fact one of the deputies attempted to apprehend or arrest an intruder who made his escape in the dark. That immediately upon (the jury) retiring it was rumored that the jury stood eleven to one for hanging; which rumor developed to be correct.”
 

 The trial judge says, and the evidence shows:
 

 “The courtroom is in the upper story of a two-story building. The jury room is immediately in the rear of the courtroom. The trial was held in the latter part of June, and consequently it was very hot. The jury, while deliberating, opened two windows leading on the outside; these windows are about 20 feet from the ground. Two persons were seen on the ground immediately under the window, and were driven away. There is no evidence that they were attempting to communicate with the jury, but, on the contrary, had simply stopped at this point in the hope, possibly, of hearing some discussion going on in the jury room. No harm or injustice resulted.”
 

 We see no merit whatever in this bill.
 

 Bill No. 6.
 

 The accused had two trials; the first having resulted in a mistrial. Before the
 
 first trial
 
 there was some feeling (but no demonstration) against him; but that had subsided before the second trial. This disposes of the contention that “popular prejudice was so great throughout the parish that a fair trial was impossible.” Moreover popular prejudice against the accused in the vicinage before trial is not a ground for granting a new trial, but only for a change of venue. If the accused is satisfied to go to trial before a jury of the vicinage, he cannot afterwards complain, if the trial was otherwise properly had.
 

 The accused further complains that “during the course of the trial the courtroom and galleries, and windows directly behind the jury box, were crowded with spectators, so much so that the jury could have heard
 
 *149
 
 any statements made by these spectators in as low a tone as a whisper. This condition was so aggravated that the court on several occasions had to instruct deputy sheriffs to drive away these spectators; but they would gather around, and it was impossible to keep them away.”
 

 The trial judge says:
 

 “It is true the courtroom and the galleries were crowded. At the beginning of the trial the court instructed the sheriff to keep people from close proximity to the jury. That was done as far as possible. At no time did any demonstration, act, or circumstance occur that interfered with or influenced the jury in the discharge of its duty. The accused had a fair and impartial trial.”
 

 In the above we see no grounds for a reversal. In State v. Holbrook, 153 La. 1025, 97 So. 27, we said:
 

 “Defendant complains that the relatives of the deceased, including officials, crowded between the defendant and the jury, thus illegally prejudicing and biasing the jury. The trial judge says: ‘The jury was not crowded, and there was no one sitting near the jury. No effort was made to influence them during the trial by any one in an illegal way.’
 

 “The judge is charged with the policing of his own court, and we will not assume that he tailed in his duty.”
 
 (Italics ours.)
 

 Decree.
 

 The judgment appealed from is therefore affirmed.