JOHNSTON *v.* STATE OF INDIANA.

[No. 29,677. Filed December 23, 1958.]

*Robert E. Clemence,* of Covington, *Keith E. Barnhart,* of Attica and *Edward L. McCabe,* of Williamsport, for appellant.

*Edwin K. Steers,* Attorney General, and *Merl M. Wall,* Assistant Attorney General, for appellee.

BOBBITT, J.—Appellant was convicted of murder in the first degree under Acts 1941, ch. 148, §1, p. 447, being §10-3401, Burns' 1956 Replacement, tried by jury, found guilty as charged and sentenced to death by electrocution.

The sole question here presented concerns the fact that one juror, Alice Leoma Harvey, failed on the *voir dire* examination to disclose that she was a second cousin of the victim named in the indictment.

The undisputed evidence is that neither appellant nor his attorney knew of such relationship until "about a week before he filed a motion for a new trial." There was no consent by the parties that this juror could serve.

Appellant asserts (1) that regardless of the juror's knowledge of such relationship under the factual situation here she was disqualfied, and he was entitled to a new trial because of such disqualification, and (2) that her failure to disclose her relationship to the victim constituted misconduct which is cause for a new trial under Acts 1905, ch. 169, §282, p. 584, being §9-1903, Burns' 1956 Replacement.

> *First:* "The construction of all statutes of this state shall be by the following rules, unless such construction be plainly repugnant to the intent of the legislature or of the context of the same statute:
>
> . . . .
>
> "Eleventh. When a person is required to be disinterested or indifferent in acting on any question or matter affecting other parties, consanguinity or affinity within the sixth degree, inclusive, by the civil law rules, or within the degree of second cousin, inclusive, shall be deemed to disqualify such person from acting, except by consent of parties."

2 R. S. 1852, ch. 17, §1, p. 339, being §1-201, Burns' 1946 Replacement.

It is asserted here that because appellant did not ask this juror specifically whether or not she was related to the victim the question was waived. Failure to challenge, without notice of the incompetency, does not constitute a waiver under this section of the statute.

On the *voir dire* examination, Mrs. Harvey was asked by the prosecuting attorney:

"Q. Did you know the other person involved in this incident, Vida Mae Foxworthy?
"A. No sir.

. . .

"Q. Do you know at this time, Mrs. Harvey, any reason why you could not sit on this jury, if called upon to do so, and render a fair and impartial verdict from the facts that were given you?
"A. There is none I know of.
[A similar question was also asked by counsel for defendant-appellant, with like answer.]

. . .

"Q. Mrs. Harvey, have you in the past read anything about this case?
"A. To my knowledge, when this case first—when this first happened, I recall reading an account in the paper.
"Q. You just read it as a passing news item?
"A. Yes."

Mrs. Harvey was questioned by appellant's attorney as follows:

"Q. You did not know the victim in this case?
"A. No.
"Q. Did you by any chance know the family?
"A. No, Sir.
"Q. And you are not personally acquainted or by

acquaintance familiar with any of the persons in this action?

"A. No."

Where, as here, the Legislature has, within the limits of their power, declared who shall not be competent as jurors, it is binding upon the courts. *Block* v. *The State* (1885), 100 Ind. 357, 361, 362.

In *Hudspeth et al.* v. *Herston* (1878), 64 Ind. 133, 134, the trial court, before the jury was sworn to decide the case, asked the following question:

"Are either of you related, by blood or marriage, to either of the parties to this suit?"

One juror—Lewis A. Baker—answered in the negative. It developed after the jury had returned a verdict, that Baker was related to the appellee within the degree prohibited by statute.[1] Baker, in an affidavit, stated that when he was examined on *voir dire,* he did not know that he was related to the appellee but such fact had since come to his knowledge. At pages 135, 136 of 64 Ind. this court said:

"It can not be said, we think, under the facts shown by the affidavits in this case, that the appellants consented to the trial of this action by a cousin of the appellee, when they did not know of such relationship until after the trial. Nor can it be correctly said, that the appellants have waived the objection to the juror, on account of his relationship to the appellee, because they did not, personally or by their counsel, examine the juror on his oath as to his relationship to the appellee. We are clearly of the opinion, that, as to this matter, the appellants had the right to rely implicitly, without any further examination, upon the answer of the juror to the question propounded to him by the court.

1. 2 R. S. 1852, ch. 17, §1, p. 339, being §1-201, Burns' 1946 Replacement.

"It seems to us, also, that the fact alleged by the juror in his affidavit, that, at the time of the trial, he was wholly ignorant of any relationship between him and the appellee, can have no possible bearing on the correct decision of the question now under consideration. The appellants had a clear legal right to have their case tried by a disinterested jury. Under the law, the juror, Baker, was not a competent juror; but, without fault or negligence on the part of the appellants, and in ignorance of his incompetency, they accepted him as a juror. As soon as they were informed of the juror's incompetency, the appellants moved the court, on that ground, for a new trial of this cause, but the motion was overruled."

It seems to us that this is exactly the situation in the case at bar and nothing has been shown by the State which would cause us to change the rule so ably stated in *Hudspeth et al.* v. *Herston, supra.*

We recognize that the Herston Case was a civil action, but, if the rule therein stated applies when only property rights are involved, certainly it should apply with intensified force when a man's life is at stake.

In our opinion this juror was wholly disqualified under the statute[1] to sit as a member of the jury which tried appellant.

*Second:* The evidence at the hearing on the motion for a new trial discloses that the juror, Alice Leoma Harvey, was present a short time prior to the trial of appellant in the home of her grandmother, Jane Riley Barker, who was an aunt of the victim, Vida Mae Foxworthy, when Mrs. Barker's obituary was prepared. The person who wrote the obituary testified, in pertinent part, as follows:

"Q. I believe you stated that in making preparation of that obituary, that the relation of the family was discussed?

"A. Well, yes, when you write an obituary—

"Q. Yes?

"A. Yes, we discussed that.

"Q. And I believe you stated your mother, Mrs. Clark and Mrs. Harvey and yourself were present?

"A. That is right.

"Q. And in the naming of this here relationship of Mrs. Jane Barker, was any mention made of Vida Mae Foxworthy?

"A. Yes, we talked and wondered if she would be at the funeral. And we talked about everybody in a social visit.

"Q. And that was in the presence of your mother, Mrs. Clark, Mrs. Harvey and yourself?

"A. Yes, sir, just a family discussion, that is right.

．　．　．

"Q. But as to the best of your recollection at the time Alice Harvey was in the kitchen in your presence, the name of Vida Mae Foxworthy was mentioned?

"A. Yes, Sir, it was.
(Re-direct examination by the court.)

"Q. Just what was the conversation at that time? Can you relate it in substance, Mrs. Wyde?

"A. Well, we were talking and wondering—

"Q. Who?

"A. Mrs. Clark, Mrs. Harvey and my mother were talking, others were going in and out. We were talking about this obituary and wondered if Wayne Babb had got word. Wayne was a cousin of mine. He lived at a distance. And we wondered if Vida would be to the funeral. You know how a family discussion is, if they would be present. It just lasted a few minutes."

This witness further testified that she and the juror—Harvey's mother, visited appellant's trial; that she spoke to the juror Mrs. Harvey, and saw her "in the jury box."

Alice Leoma Harvey, the juror, testified at the hearing, in part, as follows:

"Q. And when you read the matter of the death of Vida Mae Foxworthy in the newspaper, that did not bring to mind anything of a relationship?

"A. No, Sir, to me it was just another news item.

"Q. And did you or did you not discuss the matter of the news item with your parents?

"A. I did not.

"Q. Did you at any time inform them you was a member of this jury?

"A. I did.

"Q. At what time in relation to the time the trial was going on?

"A. After the trial started. It was when they were selecting jury; when I was called to be selected, because I left baby with my mother the day I come up.

"Q. That is just when they were selecting the jury?

"A. Yes, Sir.

"Q. Do you know whether or not your mother was here in the court room during the trial?

"A. She was not.
On cross-examination, in answer to questions by Keith E. Barnhart, Attorney for defendant, the witness testified as follows:

"Q. You did inform your mother you were sitting as a juror on this case?

"A. Yes, I did.

"Q. And in fact you left your child there and explained to her why you were leaving the child?

"A. The first day is the only time.

"Q. That was before the trial started?

"A. Yes, that was first day I was up here.

"Q. And you did not discuss this case with anyone during the trial?

"A. No, Sir, I did not."

In *Block* v. *The State, supra* (1885), 100 Ind. 357, the judgment was reversed because one of the jurors was incompetent and this fact did not come to the knowledge of the appellant until after the trial.

In *Rhodes* v. *The State* (1891), 128 Ind. 189, 27 N. E. 866, 25 Am. St. Rep. 429, after the trial, one of the jurors made affidavit that his eyesight was so defective that he could not distinguish one of the witnesses from another, or see the face of the defendant. In reversing the judgment, this court, at page 197, said:

> "The accused was not negligent, for he, by his counsel, fully examined the jurors as to their qualifications. The answers of the juror of whom we are speaking were such as to disarm suspicion of his disqualification, and there was nothing to indicate that his eyesight was defective."

In *Gaff* v. *The State* (1900), 155 Ind. 277, 58 N. E. 74, 80 Am. St. Rep. 235, it was discovered, after trial and conviction, that two of the jurors were deputy sheriffs. In reversing the judgment this court, at pages 278-279, said:

> "These deputy sheriffs would doubtless have been rejected by the court on challenge for cause if the facts had been made known. Appellant was not bound to anticipate that talesmen would be called from among the sheriff's deputies, and these men should have disclosed the relationship on the general examination as to their competency. *Block* v. *State* 100 Ind. 357; *Rhodes* v. *State,* 128 Ind. 189, [27 N. E. 866], 25 Am. St. 429."

The reasons for a *voir dire* examination of jurors and their duty in response thereto are ably stated in *Pearcy* v. *The Michigan Mutual Life Insurance Company* (1887); 111 Ind. 59, at pages 61, 62, 12 N. E. 98, 60 Am. St. Rep. 673, as follows:

"The examination of a juror on his *voir dire* has a two-fold purpose, namely, to ascertain whether a cause for challenge exists, and to ascer-tain whether it is wise and expedient to exercise the right of peremptory challenge given to parties by the law. It is often important that a party should know the relation sustained by a person called as a juror to his adversary, in order that he may interpose a challenge for cause, or exercise his peremptory right to challenge. It is the duty of a juror to make full and truthful answers to such questions as are asked him, neither falsely stating any fact nor concealing any material matter, since full knowledge of all material and relevant matters is essential to a fair and just exercise of the right to challenge either peremptorily or for cause. A juror who falsely misrepresents his interest or situation, or conceals a material fact relevant to the controversy, is guilty of misconduct, and such misconduct is prejudicial to the party, for it impairs his right to challenge."

In *Foreman* v. *State* (1932), 203 Ind. 324, 180 N. E. 291, a juror on *voir dire* examination answered "No" to the question: "Do you know Charles Rickert, the janitor of the German Reformed Church on the south side?" It appears that the appellant was attempting to obtain a jury who were not acquainted with the prosecuting witness Charles Rickert. The juror's answer to the question propounded to him was accepted as correct and truthful, and appellant knew nothing to the contrary until after the jury had returned its verdict. The appellant had not used more than five peremptory challenges, and asserted that had the juror answered the question truthfully, he would have exercised his right of a peremptory challenge. The juror admitted that at the time he answered the question "he did know that a person by the name of Rickert was employed as janitor at the German Reformed Church in Huntington, Indiana, but did not know him as Charles

Rickert, and had no personal acquaintance with him; that he had seen Rickert about the church at times when he passed the church going from his home to the business part of the city of Huntington; that his first knowledge of Rickert's given name was after affiant was selected as a juror and Rickert appeared as a witness; that he did not give the testimony of this witness undue credence but considered it along with all of the other evidence and 'gave it such weight as he thought it was entitled to.'" At page 330 of 203 Ind., this court said:

". . . a juror's failure to make full and truthful answers to questions asked him on his *voir dire* examination concerning his relation to the parties litigant or to others directly or indirectly interested in the outcome of the litigation, is misconduct, and will be regarded as prejudicial for the reason it impairs the parties right to challenge." Citing authorities.

It has been repeatedly held by this court that if the general question on the *voir dire* examination "fairly arouses the juror's attention and directs it to the information desired, it is enough without specific questions covering minute phases of the subject." *Pearcy* v. *The Michigan Mutual Life Insurance Company, supra* (1887), 111 Ind. 59, 62, 12 N. E. 98, 60 Am. St. Rep. 673.

The defendant-appellant was not guilty of any negligence in not discovering sooner the fact of the juror's relationship to the victim.

Appellant had the right to presume that Mrs. Harvey was a competent juror, and he was under no obligation to anticipate possible objections unless he had notice or some reason to suppose that such existed. *Rice* v. *The State* (1861), 16 Ind. 298, 300.

Appellant being told by the juror that she did not know the victim in the case; that she did not know the family; and by answer to a question by the prosecuting attorney, that she knew of no reason why she could not sit on the jury, and render a fair and impartial verdict, he was not required to go further and ask specifically if she were related to the victim within the fifth degree, as prohibited by statute.

If Mrs. Harvey knew of her relationship to the victim at the time she reported for jury duty, and when she was asked if she knew the family of the victim, she should have come forward at that time with the information concerning such relationship.

When Mrs. Harvey was asked on the *voir dire* examination if she knew of any reason why she could not sit as a juror, it was her duty to state her relationship to the victim and, failing to do so, appellant had a right to rely upon her answer that there was none.

In our opinion the juror—Alice Leoma Harvey—was guilty of misconduct which was prejudicial to the appellant because it deprived him of his right to challenge for cause.

For the foregoing reasons the judgment must be reversed.

Judgment reversed with instructions to the trial court to grant appellant's motion for a new trial.

Landis, C. J., and Emmert, J., concur.

Achor, J., concurs with separate opinion.

Arterburn, J., concurs in result with separate opinion.

## CONCURRING OPINION

ARTERBURN, J.—In this case on the *voir dire* examination of the jury a juror, Alice Harvey, was asked if she was acquainted with the victim involved in the

case being tried or knew any of the persons in the case. She answered "no". The appellant thereafter showed that she was a first cousin once removed of the victim of the homicide. There is no evidence that she actually knew this relationship, although there is some evidence that she was present at a time when an obituary was prepared in the family upon the death of another person and the name of the murdered victim who was then living, was listed therein. The trial court, however, found against the appellant upon the issue of the juror, Harvey, having any knowledge of such relationship. We must accept the court's findings of fact in that respect.

The purpose of a *voir dire* examination is to give the appellant the opportunity to inquire into the interests of a juror. It is the law that a failure on the part of the defendant to ask questions concerning the qualifications of the jurors is a waiver of objections upon that ground. Were it otherwise, a defendant might intentionally avoid questioning jurors on specific qualifications, well knowing there might be some disqualifications existing, then await the outcome of the case and if adverse, thereupon use such disqualifications as grounds for a new trial. The law cannot be trifled with in that fashion. A failure to make a reasonably specific inquiry as to a juror's qualification would be a waiver of any objections on that account.

The question here no doubt could have been more specific as to any relationship. However, a reasonable interpretation of this rule is required. It seems to me that a question as to whether the juror has any acquaintance with or knows the family of a certain person, reasonably comprehends any relationship with such person. I, therefore, feel the answer, although honestly

given by the juror, misled the defendant-appellant in his examination as to the qualifications of the juror.

## CONCURRING OPINION

ACHOR, J.—Appellant was convicted of first degree murder by jury and sentenced on November 1, 1957, by the Fountain Circuit Court to suffer punishment by death.

The evidence at the trial is not included in the transcript and no issue is presented as to the sufficiency of the evidence to sustain the conviction.

The questions asserted as grounds for new trial and here argued as causes for appeal are presented by the fact that one of the jurors, Alice Leoma Harvey, (1) failed to disclose on her *voir dire* examination that she was acquainted with the murder victim or the family and (2) that she was in fact a first cousin once removed of the murder victim.

Appellant asserts first, that this failure to disclose the fact of her acquaintance with the murder victim and the family constituted misconduct, tending to prevent a fair and due consideration of the case, which is cause for new trial within the terms of §9-1903, Burns' 1956 Repl.[1]

Secondly, appellant asserts that the fact of the proven relationship of the juror and the deceased, regardless of the knowledge of such relationship on the part of the juror, disqualified the juror, and, therefore, appellant was entitled to a new trial as a matter of right.

---

1. "The court shall grant a new trial to the defendant for the following causes, or any of them:

". . .

"Fourth. When the jury has been guilty of any misconduct tending to prevent a fair and due consideration of the case." §9-1903, Burns' 1956 Repl. [Acts 1905, ch. 169, §282, p. 584.]

I am of the opinion that the case must be reversed because of the facts stated in the motion for new trial, but not upon the theory of appellant's argument as stated above. In my opinion the fact of this erroneous answer in itself constituted cause for new trial. Acquaintance with the murder victim or her family was a matter going to the partiality of the juror.

Appellant was entitled to trial by an impartial jury.[2] In order to guarantee this right appellant was entitled to truthful answers to questions asked of juror on *voir dire*, going to this important question. Therefore, upon failure of a juror to truthfully answer such questions an accused is entitled to relief from a verdict which is actually influenced by partiality and bias, or which by specific provisions of the statute are presumed to have been so influenced.

In this case the juror was specifically interrogated regarding her acquaintance with the murder victim or the family. By her own testimony, although she apparently did not identify the murder victim by her married name, she was acquainted "with the family," and knew of her relationship to the family. Her answer in the negative, although honest, was erroneous. However, appellant has protected his right to challenge the juror for partiality by asking regarding her acquaintance with the family.

I do not concur in the majority opinion that appellant was entitled to a new trial, either on the ground of misconduct of the juror or that proof of relationship, in itself, constituted grounds for new trial as a matter of law.

Let us consider first the issue as to the alleged *misconduct* of the juror which appellant asserts tended to

2. Art. 1, §13, Constitution of Indiana, Amend, 6, Constitution of the United States.

prevent a fair consideration of the case. There is no question that if a juror knowingly makes false answers on *voir dire* examination or fails to make full and complete answers to questions in matters related to the juror's impartiality, such misconduct will be cause for new trial. *Lamphier* v. *The State* (1880), 70 Ind. 317, 321. *Cf. Pearcy* v. *The Michigan Mutual Life Insurance Company* (1887), 111 Ind. 59, 12 N. E. 98, 60 Am. Rep. 673; *Foreman* v. *State* (1932), 203 Ind. 324, 180 N. E. 291. See also, *Ohlwine* v. *Pfaffman* (1913), 52 Ind. App. 357, 100 N. E. 777; *Sturrock* v. *State* (1951), 229 Ind. 161, 96 N. E. 2d 226.

However, in the case before us the juror's testimony on *voir dire* and at the hearing on the motion for new trial is unequivocal that she was not acquainted with the deceased or the family. Admittedly, there was some evidence from other witnesses that circumstances had existed out of which the juror might have become acquainted with the deceased victim, or associated her with members of her family with whom she was acquainted. However, it cannot be said with certainty that this evidence did more than support the fact of an *opportunity* for such knowledge. The most that could be said is that there was a conflict in the evidence regarding full and honest answers of the juror on *voir dire* examination. This presented a question of fact for the trial court to determine. *Holloway* v. *State* (1876), 53 Ind. 554; *McCulley* v. *The State* (1878), 62 Ind. 428; *Achey* v. *The State* (1878), 64 Ind. 56; *Walker* v. *The State* (1885), 102 Ind. 502, 1 N. E. 856; *Stephenson* v. *The State* (1887), 110 Ind. 358, 11 N. E. 360, 59 Am. Rep. 216; *Smith* v. *State* (1895), 142 Ind. 288, 41 N. E. 595.

After considering all the evidence the court, by denying the motion for new trial, concluded that the juror

was not, in fact, acquainted with the deceased victim and that she was not "guilty of any misconduct tending to prevent a fair and due consideration of the case." [§9-1903, *supra.*] The action of the lower court will not be reversed by this court by reason of these circumstances. *Smith* v. *State, supra.*

The second question presented is whether appellant is entitled to a new trial because of the subsequently established relationship of the juror and the deceased victim, even though that relationship was unknown to the juror at the time of the trial. In order that mere relationship, not known to a juror, may constitute cause for disqualification as a matter of law, such disqualification must find its origin either within some constitutional or statutory declaration.

Specific constitutional provisions within the state and federal constitutions regarding the qualifications of a juror merely provide that the juror be "impartial."[3] Not knowing of her relationship to the murder victim, it cannot be said as a fact that the juror was biased because of that relationship. Therefore, grounds for disqualifying the juror as a matter of law must be found outside these explicit constitutional provisions. Appellant contends that such grounds exist in the statutes enacted to implement the above constitutional guarantee. The pertinent statutes which appellant relies upon are as follows:

"...
"Eleventh. When a person is required to be disinterested or indifferent in acting on any question or matter affecting other parties, consanguinity or affinity within the sixth degree, inclusive, by the civil law rules, or within the degree of second cousin, inclusive, shall be deemed to disqualify

3. Art. 1, §13, Constitution of Indiana, Amend. 6, Constitution of the United States, *supra.*

such person from acting, except by consent of parties." [§1-201, Burns' 1946 Repl.] [2 R. S. 1852, ch. 17, §1, p. 339.]

"The following shall be good causes for challenge to any person called as a juror in any criminal trial:

". . .

"Fourth. That he is related within the fifth degree to the person alleged to be injured or attempted to be injured, by the offense charged, or to the person on whose complaint the prosecution was instituted, or to the defendant." [§9-1504, Burns' 1956 Repl.] [Acts 1905, ch. 169, §230, p. 584.]

A decision in this case must rest upon the construction of said statutes as applied to the facts before us.

In support of his contention that the relationship of the juror disqualified her as a matter of law, appellant cites numerous decisions of this court holding that if a juror makes false answers to questions regarding his competency or incompetency in matters which are by statute considered to affect his impartiality as a juror, such juror will be treated as incompetent and a new trial ordered, even though such false answers are innocently and honestly made. *Hudspeth et al.* v. *Herston* (1878), 64 Ind. 133; *Rice* v. *The State* (1861), 16 Ind. 298. *Cf. Block* v. *The State* (1884), 100 Ind. 357; *Johnson et al.* v. *Tyler et al.* (1891), 1 Ind. App. 387, 27 N. E. 643; *Cf. Gaff* v. *State* (1900), 155 Ind. 277, 58 N. E. 74, 80 Am. St. Rep. 235.

The reason supporting the ruling in those cases is that in matters which are by statute considered likely to affect his impartiality, a party who wishes to claim absolute protection of the statute as to the impartiality of a juror may do so by interrogating such juror upon the specific subjects. However, the above cited cases are distinguishable from the case before us, in that here it cannot be said that the juror made false answers,

innocently or otherwise, upon the specific matter of her relationship to the murder victim, which relationship, by *statute,* carries a presumption of bias.

Furthermore, in support of his position, appellant relies upon the case of *Hudspeth et al.* v. *Herston, supra* [64 Ind. 133]. In that case it was discovered after trial that one of the jurors was related to the appellee within the sixth degree. There, as here, the juror was ignorant of his relationship. In that case the court used the following language, upon which appellant relies:

> ". . . the fact . . . the juror . . . was wholly ignorant of any relationship between him and the appellee, can have no possible bearing on the correct decision of the question now under consideration. The appellants had a clear legal right to have their case tried by a disinterested jury. Under the law, the juror, Baker, was not a competent juror; but, without fault or negligence on the part of the appellants, and in ignorance of his incompetency, they accepted him as a juror. . . ."

The above statement of law is still good law, as applied to the facts in that case. Every accused was entitled to a "disinterested jury," and the law provides extensive safeguards to which an accused may protect himself against jurors who are incompetent because of their impartiality. However, the statement, "under the law, the juror, Baker, was not a competent juror," must be considered in the light of the facts in that case and the law as stated in the previous decisions of the court. In that case *all the prospective jurors were expressly interrogated by the court as to their relationship to the parties,* and each juror, including Baker, answered in the negative. The previous decisions of the court construing the statute [§1-201, *supra*], had held that a party's right to object to a

juror on grounds of partiality, including the fact of his relationship, must be affirmatively exercised and that unless a party's failure to assert his rights "without fault or negligence" on his part, failure to exercise the right constituted a waiver thereof.[4]  Accordingly the court, in the Hudspeth case, *supra* [64 Ind. 133, 135-136], recognized that waiver was an issue and proceeded to explain its decision under the facts presented, as follows:

> "It can not be said, . . . under the facts . . . that the appellants consented to the trial of this action by a cousin of the appellee, . . . Nor can it be correctly said, that the appellants have waived the objection to the juror, . . . *The appellants had the right to rely implicitly,* without any further examination, *upon the answer of the juror to the question propounded to him by the court.*" (Our italics.)

The Hudspeth case, *supra,* and the case at bar are clearly distinguishable regarding the facts constituting a waiver on the part of the appellant. In the case at bar, the interrogation of the juror went only to her actual knowledge or *acquaintanceship* with the deceased victim or her family. It did not purport to cover the question of her statutory incompetency because of *relationship.*

The controlling statutes do not, as contended by appellant, absolutely disqualify a juror as a matter of law because of his relationship to the deceased victim. The early statute, §1-201, *supra,* provided that "consanguinity or affinity within the sixth degree, inclusive, . . . shall be deemed to disqualify such person from acting [as a juror], *except by consent of*

---

4.  *Romaine* v. *The State* (1885), 7 Ind. 63; *Estep et al.* v *Waterous et al.* (1873), 45 Ind. 140; *Croy* v. *State* (1869), 32 Ind. 384; *Alexander* v. *Dunn* (1854), 5 Ind. 122; *Barlow* v. *The State* (1827), 2 Blackf. 114.

*parties."* (Our italics.) In construing this and similar statutes this court both before[5] and after[6] the Hudspeth case, *supra,* has held that the right to challenge for cause is not self-exercising, but must be affirmatively and timely exercised, and that failing this the right is considered waived. The later statute, §9-1504, *supra,* enacted subsequent to the decisions in footnote 4, must be considered to have affirmed the construction placed upon the earlier statute, §1-201, *supra,* by stating that such relationship was one of the "causes for challenge." Causes for challenge generally must be affirmatively exercised or are considered waived. In this case the appellant did not interrogate the juror on the subject of her relationship with the murder victim. Therefore, we must consider that right to challenge the juror for that specific reason was waived.

This position conforms with the great weight of authority in other jurisdictions. The general rule upon this subject has been stated as follows in 23 C. J. S., §1446, p. 1174:

> "In general it is not alone ground for a new trial that, unknown to accused, a juror was related . . . to the person accused is charged to have killed,[7] . . . The rule applies especially . . . where he failed to exercise reasonable diligence to discover the relationship;[8] . . ."

5. *Romaine* v. *The State, supra; Estep et al.* v. *Waterous et al., supra; Croy* v. *State, supra; Alexander* v. *Dunn, supra; Barlow* v. *The State, supra.*

6. *Douthitt* v. *The State* (1896), 144 Ind. 397, 42 N. E. 907; *Patterson* v. *The State* (1880), 70 Ind. 341. See also *Hodges* v. *Bales* (1885), 102 Ind. 494, 1 N. E. 692.

7. *State* v. *Scott* (1949), 359 Mo. 631, 223 S. W. 2d 453; *Perkins* v. *State* (1931), 120 Tex. Cr. 399, 46 S. W. 2d 672; *State* v. *Carricut* (1924), 157 La. 140, 102 So. 98; *Traviss* v. *Commonwealth* (1884), 106 Pa. 597.

8. *Lee* v. *State* (1941), 64 Ga. App. 290, 13 S. E. 2d 79; *Johnson* v. *State* (1935), 53 Ohio App. 410, 5 N. E. 2d 343; *Cambron* v. *State* (1933), 227 Ala. 575, 151 So. 443; *State* v. *Mouzon* (1928), 148 S. C. 196, 145 S. E. 799.

98

In other jurisdictions it has been held that failure to examine a juror regarding his relationship on *voir dire* constitutes failure to exercise due diligence within the above general rule.[9] In fact the general rule seems now to be that a relationship, even though within the degree prohibited by statute, which is unknown to the juror, is not, standing alone, ground for a new trial.[10] The reason for the rule is that a juror, though related to the deceased, if ignorant of that fact, could not be influenced or biased, nor could the accused be prejudiced thereby.[11]

NOTE.—Reported in 155 N. E. 2d 129.

---

9. *Edwards* v. *State* (1938), 28 Ala. App. 409, 186 So. 582; *People* v. *McNabb* (1935), 3 Cal. 2d 441, 45 P. 2d 334, certiorari dismissed, *McNabb* v. *People of State of California*, 296 U. S. 660; *Couch* v. *Commonwealth* (1953), 255 S. W. 2d 478; *State.* v. *Carricut, supra; State* v. *Figuli* (1938), 36 N. E. 2d 19, App. dism'd 134 Ohio St. 495, 17 N. E. 2d 920; *Hill* v. *State* (1935), 129 Tex. Cr. 451, 87 S. W. 2d 719.

10. *People* v. *Boren* (1903), 139 Cal. 210, 72 P. 899; *State* v. *Fox* (1932), 52 Idaho 474, 16 P. 2d 663; *Hodges* v. *Bales* (1885), 102 Ind. 494, 1 N. E. 692; *Jones* v. *Commonwealth* (1953) (Ky.), 256 S. W. 2d 520; *Brumfield* v. *State* (1912), 102 Miss. 610, 59 So. 849; *State* v. *Miller* (1932), 331 Mo. 675, 56 S. W. 2d 92; *State* v. *Cooke* (1918), 176 N. C. 731, 97 S. E. 171; *Traviss* v. *Commonwealth* (1884), 106 Pa. 597, *supra; State* v. *Mouzon* (1928), 148 S. C. 196, 145 S. E. 799, *supra; State* v. *Worthington* (1930), 109 W. Va. 449, 155 S. E. 313.

11. *Miller* v. *Commonwealth* (1924), 203 Ky. 437, 262 S. W. 579; *State* v. *Stewart* (1922), 296 Mo. 12, 246 S. W. 936; *State* v. *Miller* (1932), 331 Mo. 675, 56 S. W. 2d 92; *Traviss* v. *Commonwealth* (1884), 106 Pa. 597, *supra; Rogers* v. *State* (1927), 109 Tex. Cr. 88, 3 S. W. 2d 455.